George E. GAYMON, Plaintiff,

v.

PRUDENTIAL LINES, INC., McAllister Lighterage Lines, Inc. and McAllister Bros., Inc., Defendants.

PRUDENTIAL LINES, INC., Third Party Plaintiff,

v.

UNITED TERMINALS, INC., Third Party Defendant.

No. 76 Civ. 149–CSH.

United States District Court,
S. D. New York.

June 22, 1979.

---

**162**

Lilly, Sullivan & Purcell, P. C., New York City, for Prudential Lines, Inc.; Peter A. Junge, New York City, of counsel.

McHugh, Heckman, Smith & Leonard, New York City, for McAllister Bros., Inc.; James M. Kenny, William M. Broderick, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant Prudential Lines, Inc. ("Prudential") moves pursuant to Rule 59(e), F.R. Civ.P., for an order amending the judgment and order of dismissal herein, so as to provide for an award of reasonable counsel fees and disbursements in its favor against co-defendant McAllister Bros., Inc. ("McAllister").

Plaintiff George Gaymon commenced this action against Prudential and McAllister to recover for personal injuries which he suffered while working as a longshoreman on board the moored Lash Barge 383, at Berth 6, Port Newark, on November 6, 1972. Prudential owned Barge 383. Gaymon was employed by the third-party defendant, United Terminals, Inc. ("United"), which was acting as stevedore on board the vessel. On the date in question, United was loading cargo into the barge from the dock. Plaintiff was injured as the result of being struck by cargo which fell upon him from the stow on Barge 383. Gaymon sued Prudential on theories of negligence and unseaworthiness. Since the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act did not become effective until thirty days after October 27, 1972, a theory of unseaworthiness was still available to Gaymon against Prudential as shipowner. Gaymon also sued McAllister on a negligence theory, the basis for the claim being that McAllister had negligently brought another barge, in tow of a McAllister tug, into collision with the berthed 383, thereby causing plaintiff's injury.

Prudential and McAllister cross-claimed against each other, and Prudential brought a third-party action against United, alleging that if Prudential was cast in liability to plaintiff, United was liable to indemnify Prudential by reason of United's breach of a warranty of workmanlike service in the stevedoring contract. Prudential's cross-claim against McAllister also asserted a right to be indemnified, including reasonable attorneys' fees and expenses, on the theory that McAllister at the time of collision was engaged in performing a towage contract with Prudential, and that the implied warranty of workmanlike service contained in that contract also gave rise to a right for indemnity.

On these issues as framed by the pleadings, the case went to trial before a jury. At the end of plaintiff's evidence the Court dismissed plaintiff's complaint against Prudential, and Prudential's third-party complaint against United. No evidence had been offered to show unseaworthiness of

the Barge 383, or negligence on the part of either Prudential or United. Various related cross-claims also fell by the wayside. The trial went forward to determine the surviving claims against McAllister: that of plaintiff for injuries resulting from negligence, and that of Prudential for indemnity. Plaintiff's claim was submitted to the jury. Prudential's indemnity claim was reserved, by stipulation of the parties, for the Court. The jury returned a verdict in plaintiff's favor on liability. McAllister and plaintiff thereupon settled the quantum of damages. By inadvertence the Court entered an order of discontinuance without ruling on Prudential's claim for indemnity, which it now reasserts in this motion. Prudential seeks to recover from McAllister its attorneys' fees and costs incurred in defending against plaintiff's suit. The affidavits on the motion claim a total of $5,552.85.

## I.

Resolution of the several liability issues at trial establishes that the Barge 383 was not unseaworthy; neither Prudential nor United was negligent; and the sole proximate cause of plaintiff's injury was the negligent navigation of a McAllister tug in bringing another barge into collision with the 383, on which plaintiff was working as a longshoreman.

Analysis of Prudential's indemnity claim must begin with *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In *Ryan* the Supreme Court declared the existence of an implied warranty of workmanlike service in a stevedore's contract, thereby permitting a shipowner to obtain indemnity from the stevedore in respect of the shipowner's liability to a longshoreman, injured aboard the vessel as the result of the stevedore's creation of an unseaworthy condition, or its negligence in bringing into play a previously existing unseaworthy condition. Subsequent decisions in the stevedoring field defined the scope of the indemnity remedy. It included reasonable attorneys' fees and disbursements incurred by the shipowner in defending against the longshoreman's claim, *Paliaga v. Luckenbach Steamship Co.*, 301 F.2d 403 (2d Cir. 1962); *DeGioia v. United States Lines Co.*, 304 F.2d 421 (2d Cir. 1962). These costs of defense were recoverable where, as here, the claim against the shipowner was dismissed on the merits, the courts reasoning that a breach of the warranty "resulting in foreseeable or potential loss to the shipowner by rendering it likely to suit" gave rise to a claim for indemnity. *Massa v. C. A. Venezuelan Navigation*, 332 F.2d 779, 782 (2d Cir. 1964).

The foregoing discussion is cast in the past tense because the 1972 amendments to the LHWCA, 33 U.S.C. §§ 901 *et seq.*, put an end to the shipowner's liability to longshoremen on the basis of unseaworthiness, and thereby overruled the stevedore's obligation to indemnify under *Ryan*. See *Fairmont Shipping Corp. v. Chevron International Oil Co., Inc.*, 511 F.2d 1252, 1258 n. 8 (2d Cir. 1975). However, as noted *ante* the accident at suit occurred prior to the effective date of the amendments.

The concept of an implied warranty of workmanlike service has been extended to other maritime contracts, including towing contracts. *James McWilliams Blue Line v. Esso Standard Oil Co.*, 245 F.2d 84 (2d Cir. 1957); *Dunbar v. Henry duBois Sons Co.*, 275 F.2d 304 (2d Cir. 1960); *Fairmont, supra*. The question posed by the present motion is whether McAllister, as a towing contractor, is liable to indemnify Prudential for its expenses in defending against the Gaymon claim, in the particular circumstances of the case.

## II.

McAllister raises a threshold issue which may be promptly disposed of. McAllister argues that there was no proof at trial of a contractual relationship between itself and Prudential. In particular, McAllister denies the sufficiency of proof that the barge which the McAllister tug pushed into collision with Barge 383 was a Prudential barge, or concerned in any way with the Prudential operation.

Of course, if McAllister was not performing under a contract with Prudential at the time of the collision, Prudential would have no basis for asserting a claim for indemnity against McAllister. But there was ample evidence, both from an eye witness and from evidence of the movements of the McAllister fleet on the date in question, that McAllister was engaged in moving Prudential Lash Barges in this immediate area, and that the barge involved in the collision with Barge 383 was, in fact, a Prudential barge. Indeed, the barge involved in the collision was being berthed adjacent to Barge 383, at the Prudential terminal. There is no basis to suppose that the McAllister tug was performing services for anyone other than Prudential at the time of the collision.

■ That is sufficient to bring into play the warranty of workmanlike service, running in favor of Prudential. The fact that the evidence did not include proof of an express written or oral contract between Prudential and McAllister is not fatal to the claim. Cf. *Waterman Steamship Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). On the evidence at trial, I find as a fact that at the time of the collision, McAllister was rendering services which gave rise to an implied warranty of workmanlike service which Prudential may assert as a foundation for its indemnity claim.

### III.

The dispositive question, therefore, is whether this particular indemnity claim fits within the *Ryan* rationale. I answer that question in the negative.

In *DeGioia, supra* at 426, the Second Circuit stated the essence of *Ryan* indemnity:

"The function of the doctrine of unseaworthiness *and the corollary doctrine of indemnification* is allocation of the losses caused by shipboard injuries to the enterprise, and within the several segments of the enterprise, to the institution or institutions most able to minimize the particular risk involved." (emphasis added).

In *Fairmont, supra*, the Court in a further historical exposition stated:

"It is doubtful that *Ryan* would have been necessary were it not for *Sieracki* [*Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099]; the pre-*Ryan* situation would not have been so inequitable had the shipowner's liability to the longshoreman turned solely on a negligence standard, rather than on the absolute seaworthiness standard imposed by *Sieracki*. Therefore, we find the crucial elements of *Ryan* to be as follows: a shipowner, relying on the expertise of another party (the contractor), enters into a contract whereby the contractor agrees to perform services without supervision or control by the shipowner; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a pre-existing unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault. Where these elements are present, there will be implied in the contract an agreement by the contractor to indemnify the shipowner for any liability it might incur as a result of an unseaworthy condition caused or brought into play by the improper, unsafe or incompetent performance of the contractor." (footnotes omitted).

This is the passage in the *Fairmont* opinion which is pertinent to the case at bar. The precise holding in *Fairmont* did not involve a claim for indemnity; the shipowner's claim against the defendant tug owner was for grounding damage to its vessel, resulting from the tug owner's breach of the warranty of workmanlike service.

■ The lesson of these cases is that the shipowner must be exposed to liability without fault *by the contractor's breach of warranty*, in order for *Ryan* indemnity to attach. That element is missing in the case at bar.

The distinction is illustrated by *Navieros Oceanikos S.A. v. S.T. Mobil Trade*, 554 F.2d 43 (2d Cir. 1977), which requires denial of the present motion. Plaintiff shipowner's

vessel, the Trade Daring, was damaged by fire that broke out while she was being bunkered from defendant's tank barge. The district court found fault on the part of the Daring's officers and the barge's pumpman, fixing the relative liability of the parties at 75% plaintiff and 25% defendant. On appeal plaintiff argued that defendant owed it a warranty of workmanlike service in respect of the bunkering operation, so that *Ryan* indemnity entitled plaintiff to recover its full damages, without regard to its contributory negligence. The Second Circuit, at 46–47, unanimously rejected the argument.[1] It first observed:

"The *Ryan* doctrine was developed in response to the harsh rule that a shipowner has a non-delegable duty to provide a seaworthy ship and that concomitantly its liability to an injured party for unseaworthiness does not depend on a finding of fault. [citing cases]. The absolute duty of seaworthiness owed by the shipowner requires the stevedore, who is entrusted with loading operations, to indemnify the owner for liability caused by the stevedore's 'failure to perform with reasonable safety.' *Davis v. Chas. Kurz & Co.*, 483 F.2d 184, 187 (9th Cir. 1973), *quoted in Fairmont Shipping Corp.,.supra* at 1257."

"Thus," the Court held, "the *Ryan* doctrine cannot be invoked unless the following elements are present:"—whereupon the Court set forth the language from *Fairmont* which is also quoted at p. 164, *ante*. The opinion in *Navieros* then resumes:

"Aside from whether the servicing party possessed expertise and controlled the bunkering, this case lacks the crucial ingredient of the *Ryan* cases, the shipowner's liability, regardless of fault, *for the unworkmanlike performance of the contractor*. Had a crewman of the Daring been injured by the overflow and resulting fire, and had the plaintiff been held liable under the unseaworthiness doctrine, then a case would exist appropriate for invoking the *Ryan* doctrine. But in the absence of plaintiff's exposure to liability regardless of fault, this is not a *Ryan* case and, consequently, while an implied warranty of workmanlike performance exists in the bunkering contract, *Fairmont Shipping Corp., supra* at 1259 & n. 13, there is no basis for an indemnity that disregards the plaintiff's contributory negligence." (emphasis added).

■ In the case at bar, Prudential was not exposed to potential liability without fault because of the unworkmanlike performance of McAllister. Such potential liability as Prudential bore to plaintiff Gaymon arose out of Prudential's stevedoring contract with United, plaintiff's employer, pursuant to which plaintiff was working cargo on board Barge 383. McAllister did not create an unseaworthy condition on board 383, or negligently trigger a previously existing unseaworthy condition, thereby exposing Prudential to liability without fault. McAllister simply ran into the barge. *Ryan* indemnity has no office to perform in the circumstances.

The hypothetical example given in *Navieros* illustrates the distinction. The Court said:

"Had a crewman of the Daring been injured by the overflow and resulting fire, and had the plaintiff been held liable under the unseaworthiness doctrine, then a case would exist appropriate for invoking the *Ryan* doctrine."

That is so because *defendant's* breach of the warranty would have created the unseaworthy condition. *Dunbar, supra*, cited by Prudential, is explicable on the same basis: the towing company's fault, in breach of its warranty, brought into play the pre-existing unseaworthy condition on the shipowner's vessel, which caused the death in suit.

In the case at bar, McAllister would have been liable to Prudential under the warranty for physical damage to Barge 383. But a claim for indemnity depends upon particular facts not here present.

---

1. Judge Manfield's dissent, at 48–50, addressed a different point.

**166**

## CONCLUSION

Prudential's motion to amend the judgment and order of discontinuance is denied.

It is So Ordered.