**Leonard GAUTHIER, Plaintiff,**

**v.**

**CROSBY MARINE SERVICE, INC., ABC Insurance Company, Crosby Industries, Inc., DEF Insurance Company, Dixie Oil Tools, Inc., GHI Insurance Company, Mark Drilling, Inc., JKL Insurance Company, Exxon Corporation, MNO Insurance Company, L. Griffin, Inc., American Marine Services, Defendants.**

**Civ. A. No. 79-2366.**

United States District Court,
E. D. Louisiana.

March 16, 1982.

A. Gordon Grant, Jr., New Orleans, La., for plaintiff.

John B. Peuler, New Orleans, La., for defendants Crosby Marine Services, Inc. and American Home Assur. Co.

Robert M. Contois, Jr., New Orleans, La., for third party defendant L. Griffin, Inc.

CASSIBRY, District Judge:

By motion to amend the judgment previously entered on the maintenance and cure claim, the plaintiff seeks reconsideration of the decision on September 17, 1980 that the defendant Crosby Marine Service, Inc. and third-party defendant L. Griffin, Inc. were entitled to a set-off for the amounts paid to plaintiff Leonard Gauthier under his Blue Cross Hospitalization Policy. The motion of plaintiff to amend is GRANTED.

## REASONS

The particular facts involved in this lawsuit constitute a case of first impression in the Fifth Circuit. The issue presented is

whether the collateral source rule applies to a maintenance and cure award where the collateral source consists of benefits paid to an injured seaman pursuant to a health insurance policy solely paid for and obtained by the seaman. No case has been cited to the court suggesting that the shipowner could rely upon the receipt by the seaman of such privately procured benefits in mitigation of the shipowner's obligation to pay maintenance and cure.

On September 17, 1980 I entered findings of fact and conclusions of law concerning the maintenance and cure claim in this matter. I found that defendant, Crosby Marine Service, Inc. ("Crosby"), and third party defendant, L. Griffin, Inc. ("Griffin"), owed the plaintiff maintenance and cure. I also found that the Blue Cross Hospitalization Policy which provided payments to the plaintiff for a portion of his medical expenses was privately procured by plaintiff solely at his own expense; I specifically noted that no part of the monthly premiums on this policy was paid by Crosby or Griffin. Despite these findings, I held that Crosby and Griffin were entitled to a set-off for the amounts paid to plaintiff under his Blue Cross policy. After carefully reconsidering this matter, I now find that Crosby and Griffin are not entitled to a set-off.

 The general rule is that the vessel owner has no obligation to provide maintenance and cure if it is furnished by others at no expense to the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Marine Drilling, Inc. v. Landry*, 302 F.2d 127, 128 (5th Cir. 1962); *Field v. Waterman Steamship Corporation*, 104 F.2d 849 (5th Cir. 1939). Thus, a seaman who receives free medical care at a Public Health Service Hospital cannot recover from the shipowner for the cost of services rendered at the hospital. As far as the seaman is concerned, the services are completely gratuitous; therefore, he has no

right to expect his maintenance and cure award from the shipowner to include the cost of the hospital services.[1] However, I find that when an injured seaman receives from a third party payment for medical expenses he has incurred, and these payments are provided pursuant to an insurance policy purchased solely by the seaman, then the maintenance and cure *is* "furnished at the expense of the seaman"; the shipowner should not be entitled to any off-set for amounts paid under such a policy.

In the present case, the benefits that Mr. Gauthier received from Blue Cross have nothing to do with the maintenance and cure obligation of Crosby and Griffin; the benefits would have been payable even if Mr. Gauthier were ineligible for maintenance and cure. A credit against that obligation therefore, would not be appropriate. If a seaman is able to afford his own health insurance policy, and he makes the prudent decision to invest his money in this manner, then the seaman, not his employer, should be entitled to all of the benefits, both direct and collateral, that might accrue as a result of having such a policy. If a shipowner's liability were reduced by the payments an injured seaman receives under a private health insurance policy, an incentive would exist for delaying the payment of maintenance and cure to induce the seaman to look first to his private insuror. This would be inconsistent with a basic purpose of maintenance and cure: to provide immediate succor, not eventual indemnity. *Calmar S. S. Corporation v. Taylor*, 303 U.S. 525, 529, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938).

The situation would be different if the policy were purchased solely by the employer. When such a policy is a voluntary undertaking by the employer to indemnify itself against its possible legal liabilities for payment of maintenance and cure, then a set-off should properly be allowed. *Haughton v. Blackships, Inc.*, 462 F.2d 788, 791 (5th Cir. 1972).

1. In a somewhat different context, it is also well established that double recovery by the seaman in Jones Act suits must be avoided where there might be an overlap with a prior award of maintenance and cure. *Pelotto v. L. & N. Towing Co.*, 604 F.2d 396, 404 (5th Cir. 1979).

Although maintenance and cure is not founded in tort (which is the usual context in which the collateral source rule comes into play), its purpose in part is to provide "inducement to masters and owners to protect the safety and health of seamen while in service," and also to strengthen the maritime service "by inducing men to accept employment in an arduous and perilous service." *Calmar, supra,* at 528, 58 S.Ct. at 653. Neither purpose would be served by allowing the shipowner to off-set his maintenance and cure obligation in proportion to payments the seaman receives under a policy purchased solely by the seaman.

The policy underlying the maintenance and cure obligation, and the liberality with which admiralty courts have traditionally interpreted rules devised for the benefit and protection of seamen who are its wards,[2] mandate that a shipowner not be permitted to off-set his maintenance and cure obligation by any amounts an injured seaman receives pursuant to his private health insurance policy.

---

**2.** *Robertson v. Baldwin,* 165 U.S. 275, 287, 17 S.Ct. 326, 331, 41 L.Ed. 715 (1897); *Cortes v. Baltimore Insular Lines,* 287 U.S. 367, 377, 53 S.Ct. 173, 176, 77 L.Ed. 368 (1932); *The Arizona v. Anelich,* 298 U.S. 110, 123, 56 S.Ct. 707, 711, 80 L.Ed. 1075 (1936).