Andrew T. ROGERS, Jr. and Barbara Rogers, Plaintiffs,

v.

NEW JERSEY BARGING CORP., Amerada Hess Corp., Spentonbush Fuel Transport Service, Inc., Spentonbush/Red Star Companies, Hygrade Operators, Inc., Diesel Vessel Operators, Inc., Red Star Marine Service Inc., Morania # 4 Inc., and Morania Oil Tanker Corp., Defendants.

In the Matter of the Complaint of NEW JERSEY BARGING CORPORATION as Owner of the TANK BARGE SALISBURY, for Exoneration from or limitation of Liability.

Nos. 82 CIV 1231 (LBS), 82 CIV 2408 (LBS).

United States District Court, S.D. New York.

June 13, 1983.

Hill, Betts & Nash, New York City, for N.J. Barging Corp.; Gregory O'Neill, Robert P. Lewis, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for Morania No. 4 Inc. and Morania Oil Tanker Corp.; James W. Lynch, Robert B. Pohl, I. Scott Bieler, New York City, of counsel.

## OPINION

SAND, District Judge.

New Jersey Barging Corporation ("New Jersey") and Morania Oil Tanker Corporation (and Morania # 4 Inc.) ("Morania"), two of the defendants in this admiralty action, filed cross-claims against each other for indemnity and/or contribution. After settlement of plaintiff's direct claims and after three days of trial on defendants' cross-claims, we announced our findings of fact and conclusions of law in open court, awarding indemnity in favor of defendant New Jersey against defendant Morania. Morania now moves to strike the award of indemnity as unsupported by our findings of fact and the applicable law. Both parties have submitted briefs and supporting affidavits addressing the circumstances under which indemnification is proper.

## FACTS

Plaintiff Andrew Rogers was severely injured on January 25, 1982 while serving as a mate on board the barge Salisbury, which was owned by defendant New Jersey Barging. Defendant Morania was at the time of the accident under contract to New Jersey to provide towing services to the Salisbury. Rogers[1] commenced this action under our admiralty jurisdiction, 28 U.S.C. § 1333, asserting claims against New Jersey for negligence, unseaworthiness, and maintenance and cure, and against Morania for negligence. Morania and New Jersey filed opposing cross-claims, each seeking contribution and/or indemnity for any liability they might incur to the plaintiff. New Jersey also filed a separate action in this Court for exoneration from or limitation of liability, which was consolidated with plaintiff's direct action for purposes of trial.

Prior to trial, Rogers dismissed his negligence and unseaworthiness claims against New Jersey and settled his claim for past and future maintenance and cure for $49,247.24. Also prior to trial, Rogers entered into a structured settlement with respect to his negligence claim against Morania valued at $907,550, to be paid over a period of years. The case proceeded to trial solely to

---

1. Rogers' wife, Barbara Rogers, was also a plaintiff in this action.

resolve the defendants' cross-claims for indemnity and contribution and, if necessary, New Jersey's exoneration and limitation claims.

This Court found that Morania had contracted with New Jersey to tow the barge Salisbury on a round-trip voyage from Bayonne, New Jersey to Groton, Connecticut. The accident giving rise to this action occurred on board the Salisbury on the morning of January 25, 1982, during an otherwise routine undocking operation. The barge was moored to the dock at Groton by a set of lines. The captain of the tug, Captain Davin, instructed the bargeman, Mr. Rogers, as to the sequence in which Rogers was to release the lines in preparing to undock the barge. After all but one of the lines were released, Rogers was to wait until he heard the sound of the tug's whistle, which would serve as the signal that Davin wanted the last line released. This procedure was in accordance with custom and practice.

After the tug's whistle is sounded, the custom and practice is for the operator of the tug to await some signal from the bargeman, either visual or by radio, indicating that the last line has been released. The tug then can begin safely to tow the barge away from the dock. We found that this practice was not followed in this case. Instead, after instructing Rogers to release the line, Captain Davin waited an interval of time and then assumed without receiving a signal from Rogers that all lines had been released. The tug began to tow the barge while one line remained attached to the dock. Because of the tension on the remaining line created by the barge's departure from the dock, the excess portion of line, which was coiled up on the barge's deck, began to unravel. As a result, the eye attached to the end of the line, used to fasten the line to the deck cleat, was projected towards Rogers. The eye struck Rogers and, together with the force of the line, threw him into the water, severed one of his legs, and caused other severe internal injuries.

On the basis of these facts and a prior proceeding before the Coast Guard, we found that the undocking operation was negligently performed by Morania and was a cause of Rogers' injuries.

Morania argued at trial that New Jersey was also responsible for causing Rogers' injuries, asserting that the barge was unseaworthy and negligently maintained. According to Morania, New Jersey was responsible for four factors that contributed to the accident: the presence of ice on the deck of the barge at the time of the accident; the improper placement on the end of the line of the eye that struck and injured Rogers; the improper coiling of the excess line; and the absence of a second crewmember aboard the barge at the time of the accident in violation of applicable regulations. We rejected each of these claims, finding no evidence of ice and no basis for a finding that the presence of the eye, the coiling of the line, or the absence of a second crew member created a negligent or unseaworthy condition contributing to the cause of the accident. We therefore dismissed Morania's cross-claim, held that New Jersey was entitled to indemnification for the liabilities it incurred that were caused by Morania's negligence, and directed that a judgment be submitted.

## DISCUSSION

Morania raises a number of objections to our award of indemnity: first, that our factual findings provide no basis for indemnification under the law of the Second Circuit; second, that New Jersey should not be indemnified for that portion of its settlement covering future maintenance and cure on the grounds that Morania's prior settlement with Rogers—of which New Jersey was fully aware—already provided for all of Rogers' future medical needs; third, that indemnification for New Jersey's attorneys' fees should be limited to expenses incurred in defending against Rogers' direct claim for maintenance and cure, and may not include fees expended in defending against

Rogers' negligence and unseaworthiness claims or Morania's cross-claim, or in pursuing New Jersey's direct indemnity action against Morania. Finally, Morania takes issue with a number of specific items for which New Jersey seeks indemnification, as well as with the overall reasonableness of New Jersey's charge for attorneys' fees.

### 1. Right to Indemnity

In *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court established that a stevedore owed an implied warranty of workmanlike service to a shipowner in performing its loading contract. This warranty permits the shipowner to obtain indemnification from the stevedore where the shipowner is exposed to liability to a longshoreman injured as the result of the stevedore's negligent creation of an unseaworthy condition aboard the vessel. Later cases have expanded the breadth and contours of *Ryan* indemnity. In *Crumady v. The J.H. Fisser,* 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), for example, the Supreme Court held that the stevedore breaches its warranty of workmanlike service not only by negligently creating an unseaworthy condition, but also by negligently bringing into play a pre-existing unseaworthy condition aboard the ship. Other cases have extended the concept of an implied warranty of workmanlike service to other maritime contracts, including contracts of towage. *E.g., Fairmont Shipping Corp. v. Chevron International Oil Co.,* 511 F.2d 1252 (2d Cir.), *cert. denied,* 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975); *Dunbar v. Henry DuBois' Sons Co.,* 275 F.2d 304 (2d Cir.), *cert. denied,* 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46 (1960).

Despite the varying circumstances under which *Ryan* has been held to apply, Morania nevertheless disputes a finding of indemnity in this action. Morania argues that this Court's sole factual finding with respect to it was one of negligence, noting correctly that we made no explicit finding after trial

that Morania breached or even owed a warranty of workmanlike services. Therefore, according to Morania, the predicate to an award of indemnity is lacking. Moreover, Morania argues that the Second Circuit's holding in *The Federal No. 2,* 21 F.2d 313 (2d Cir.1927), bars indemnity under the specific facts of this case.

■ We have no doubt that an implied warranty of workmanlike service existed between Morania and New Jersey on the facts of this case, and we so hold. *Fairmont Shipping Corp. v. Chevron International Oil Co., supra,* 511 F.2d at 1259–60 ("*Ryan* confirmed the applicability to maritime service contracts of the hornbook rule of contract law that one who contracts to provide services impliedly agrees to perform in a diligent and workmanlike manner."). We also have no doubt that our prior finding of negligence on the part of Morania serves as a basis for a finding that the warranty was breached. *United States v. Tug Manzanillo,* 310 F.2d 220 (9th Cir.1962) ("[A] towing agreement gives rise to a 'warranty of workmanlike service' which is breached by negligence on the part of the operator of the tug." (citing *James McWilliams Blue Line v. Esso Standard Oil Co.,* 245 F.2d 84 (2d Cir.1957) and *Dunbar v. Henry DuBois' Sons Co., supra* )).

Morania's reliance on *The Federal No. 2, supra,* is not persuasive. In that case, the Second Circuit held that a bargeowner was not entitled to indemnification for maintenance and cure payments it made to a seaman injured on account of the negligence of a tug engaged by the bargeowners. The Court reasoned that the bargeowner's liability to the seaman, founded on a contractual relation, was unrelated to the tortious conduct of the tug. "The effective and proximate cause of the [bargeowner's] damage is due to the contract with the seaman, and the law does not predicate liability upon the party occasioning a contingency contemplated in that contract of employment." 21 F.2d at 314. The Court reasoned further that indemnification would be improper

where there is "neither the natural right nor legal relationship between the [barge] and the tug . . . ." *Id.*

Of course, *The Federal No. 2* was handed down nearly thirty years before *Ryan* established an implied warranty between stevedore and shipowner. This in itself would appear to undermine one of the foundations of the Second Circuit's holding—the lack of a legal relationship between barge and tug. While *The Federal No. 2* has never been expressly overruled, it undoubtedly retains little, if any, vitality in light of *Ryan* and its progeny. *See, e.g., Mahramas v. American Export Isbrandtsen Lines, Inc.,* 475 F.2d 165, 170 n. 7 (2d Cir.1973) ("[W]e see no reason why an employer [of a seaman] . . . could not seek indemnification against the owner for maintenance and cure that [the employer] became liable for because of the owner's negligence. We question the continued validity of *The Federal No. 2* to the extent that it would prohibit such an indemnification." (citations omitted)); *Flunker v. United States,* 528 F.2d 239, 242 n. 1 (9th Cir.1975) ("We are aware that *The Federal No. 2* does not sail in untroubled waters. The Third Circuit has flatly rejected it, and the Second Circuit itself may be prepared to scuttle it." (citing *Mahramas, supra* )); *see also* Gilmore and Black, The Law of Admiralty § 6–16, at 317 n. 78 (2d ed. 1975) ("Given the contractual arrangement between the owner of the barge and the owner of the tug, *The Federal No. 2,* on its own facts, would not be followed anywhere today.").

■ The question in this case, quite simply, is whether the rationale of *Ryan* applies to an award of maintenance and cure as opposed to an award based on a finding of unseaworthiness. In *Fairmont Shipping, supra,* the Second Circuit explained the predicate to *Ryan* indemnification:

> We find the crucial elements of *Ryan* to be as follows: a shipowner, relying on the expertise of another party (the contractor), enters into a contract whereby the contractor agrees to perform services

without supervision or control by the shipowner; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a pre-existing unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault.

511 F.2d at 1258. We find that the *Ryan* criteria are satisfied in this case. As we noted above, an implied warranty of workmanlike service existed between Morania and New Jersey. The breach of that warranty exposed New Jersey to liability for maintenance and cure payments, which are due an injured seaman regardless of the fault of the employer. Gilmore and Black, The Law of Admiralty § 6–6 (2d ed. 1975). While *Ryan* itself speaks in terms of "unseaworthiness," the Second Circuit noted in *Fairmont Shipping, supra,* that there is authority for applying *Ryan* to situations where the indemnitee's liability is predicated on some non-fault basis other than unseaworthiness, such as maintenance and cure. 511 F.2d at 1258 n. 11 (citing *United States v. Tug Manzanillo,* 310 F.2d 220 (9th Cir.1962)). Finally, the fact that New Jersey settled Rogers' claim for maintenance and cure prior to trial does not bar an award of indemnification. *See Waterman Steamship Corp. v. Dugan & McNamara, Inc.,* 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); *Paliaga v. Luckenbach Steamship Co.,* 301 F.2d 403, 409 (2d Cir.1962). The *Ryan* criteria having been satisfied, New Jersey is entitled to indemnification with respect to its maintenance and cure settlement with Rogers.

Morania takes issue with certain components of the maintenance and cure settlement for which New Jersey seeks indemnification. In particular, Morania contends that its settlement with Rogers, which included $500 a month for 39 years to cover future medical expenses, fully compensated Rogers for future "cure." Because New Jersey was aware of this aspect of the Morania agreement when it entered into its

maintenance and cure settlement with Rogers, Morania argues that New Jersey was, in effect, "volunteering" payments for future maintenance and cure it was not required to make, and thus is not entitled to indemnification in that regard.

■ Although it is generally true that the vessel owner is not obligated to pay maintenance and cure where such payments are furnished by others at no expense to the seaman, *see Johnson v. United States,* 333 U.S. 46, 50, 68 S.Ct. 391, 393, 92 L.Ed. 468 (1948); *Pyles v. American Trading & Production Corp.,* 372 F.2d 611, 619 (5th Cir. 1967); *Gauthier v. Crosby Marine Service, Inc.,* 536 F.Supp. 269, 270 (E.D.La.1982), it is also the case that payments for maintenance and cure are independent of compensatory damages and, while there is often overlap, serve a separate and distinct purpose, *see Ryan v. U.S. Lines,* 303 F.2d 430, 432 (2d Cir.1962); *In re Oskar Tiedemann and Co.,* 367 F.2d 498, 505 n. 6 (3d Cir.1966). An award of prospective maintenance and cure is allowable only in such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained. The relief is limited in nature, and should not be awarded beyond the point of maximum cure. *Farrell v. United States,* 336 U.S. 511, 517–19, 69 S.Ct. 707, 710–11, 93 L.Ed. 850 (1949); *Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938).

■ We find on the facts of this case that Morania's settlement did not include payments for maintenance and cure for which New Jersey now seeks indemnification. Most persuasive in this regard is the fact that the medical payments in the Morania settlement were to stretch over a period of 39 years, an indication that they were not in any real sense keyed to the specific future medical demands of the plaintiff. Indeed, a payment arrangement of this type would no doubt be disallowed as a maintenance and cure remedy, as it would

continue beyond the point of maximum cure. The medical component of Morania's settlement is more appropriately viewed as a series of lump-sum payments to offset permanent disability based on life expectancy, a form of compensation not allowable as part of a maintenance and cure award. *See Farrell v. United States, supra.*

■ Even if some overlap did exist in these settlements, we recognize that New Jersey was not a party to Morania's settlement with Rogers. Although New Jersey was aware of the settlement, it remained potentially liable to Rogers on his maintenance and cure claim despite the fact that Rogers and Morania had reached settlement. Any settlement between Morania and Rogers was solely in discharge of Morania's potential liability to Rogers, and would not necessarily offset or extinguish Rogers' claims against New Jersey for maintenance and cure. *See Flunker v. United States, supra,* 528 F.2d at 244–45.

■ Morania also objects to a number of specific miscellaneous items in New Jersey's settlement with Rogers for which New Jersey now seeks indemnification, including an item for wages. Wage payments covering the period until the end of the voyage on which the seaman's injury occurred are appropriate as part of a maintenance and cure award. *Catrakis v. Nautilus Petroleum Carriers Corp.,* 427 F.Supp. 255, 259 (S.D.N.Y.1977) (and cases cited therein). Morania's citation to *Perez v. Suwanee Steamship Co.,* 239 F.2d 180 (2d Cir.1956), for the proposition that wages are not allowed in addition to maintenance and cure is unconvincing. *See Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (rejecting the suggestion in *Perez* that maintenance and cure payments must be reduced by earned wages). Moreover, there is no evidence that New Jersey's settlement with Rogers included a *double* payment for wages, as Morania suggests by its citation to *Perez.* In all other respects, we find the maintenance and cure settlement reasonable, and

therefore allow New Jersey full indemnification.

## 2. Attorneys' Fees

■ New Jersey seeks indemnification for all attorneys' fees expended in this litigation. It is settled that the *Ryan* doctrine includes a right to indemnification for reasonable attorneys' fees and disbursements incurred by the shipowner in defending against the injured seaman's claim. *Paliaga v. Luckenbach Steamship Co.,* 301 F.2d 403 (2d Cir.1962); *DeGioia v. U.S. Lines Co.,* 304 F.2d 421 (2d Cir.1962). Attorneys' fees are also recoverable where the claims against the shipowner are dismissed, because the breach of the warranty of workmanlike service resulted in a "foreseeable or potential loss to the shipowner by rendering it likely to suit." *Massa v. C.A. Venezuelan Navigacion,* 332 F.2d 779, 782 (2d Cir.1964), *cert. denied,* 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964); *see Paliaga v. Luckenbach Steamship Co., supra,* 301 F.2d at 409–410.

In this action, Rogers settled his maintenance and cure claim against New Jersey prior to trial, and dismissed his negligence and unseaworthiness claims with prejudice. Morania concedes that if it is found liable to New Jersey for New Jersey's maintenance and cure settlement with Rogers, it is also liable for the attorneys' fees expended by New Jersey in defending against that claim. It argues, however, that it is not liable for the expenditures incurred by New Jersey in defending against the negligence and unseaworthiness claims. According to Morania, any negligent conditions aboard the barge would have been wholly a product of New Jersey's own actions and would not expose New Jersey to liability without fault—the predicate to *Ryan* indemnity. Furthermore, Morania argues that any finding of unseaworthiness on the part of the barge Salisbury would be entirely a result of New Jersey's actions rather than of Morania's negligence. Finally, Morania suggests that because New Jersey was found free from fault and was never exposed to liability on Rogers' negligence and unseaworthiness claims, it is not entitled to indemnity under the analysis in *Gaymon v. Prudential Lines, Inc.,* 473 F.Supp. 161 (S.D.N.Y.1979).

■ Morania's argument with respect to the seaworthiness claim is without foundation. Even if an unseaworthy condition did exist aboard the Salisbury solely as a result of New Jersey's actions (which was not the case here), New Jersey would still be entitled to indemnification if Morania's negligence brought such a pre-existing unseaworthy condition into play, causing harm to the plaintiff and thereby exposing New Jersey to liability without fault. *See Fairmont Shipping Corporation v. Chevron International Oil Co., supra,* 511 F.2d at 1256; *Crumady v. The J.H. Fisser,* 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

■ New Jersey's indemnification claim for attorneys' fees expended in defending against plaintiff's negligence cause of action presents a more difficult problem. Potential liability to the plaintiff based on a negligence theory does not, of course, constitute exposure to liability without fault, the key ingredient to *Ryan* indemnity. There are suggestions, however, that even a negligent shipowner may be entitled to *Ryan* indemnity, depending on the degree of its culpable conduct. *See Weyerhaeuser Steamship Co. v. Nacirema Operating Co.,* 355 U.S. 563, 567–68, 78 S.Ct. 438, 440–41, 2 L.Ed.2d 491 (1958); *Stevens v. East-West Towing Co.,* 649 F.2d 1104, 1110 (5th Cir. 1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982); *Tebbs v. Baker-Whiteley Towing Co.,* 407 F.2d 1055 (4th Cir.1969); *cf. Fairmont Shipping, supra,* 511 F.2d at 1260 (negligence on the part of shipowner will not necessarily bar recovery in direct damage action against tug for breach of tug's warranty of workmanlike service). In this action, we find that the particular acts of negligence attributed to New Jersey by Morania are not of such a

degree as to have barred New Jersey from seeking full indemnification for any resulting liability to Rogers. Moreover, as an equitable matter, the fact that we found New Jersey to be free from fault militates in favor of indemnity. To the extent *Gaymon v. Prudential Lines, supra,* suggests a contrary result, we decline to follow it.[2] We find, therefore, that New Jersey is entitled to indemnification for attorneys' fees expended in defending against both the

negligence and unseaworthiness causes of action.

■ New Jersey's right to indemnification for attorneys' fees must be limited, however, to fees incurred on or before January 11, 1983, the date Rogers dismissed his negligence and unseaworthiness claims against New Jersey and settled his maintenance and cure claim. After that date, all attorneys' fees were expended in litigating

---

2. In *Gaymon v. Prudential Lines, Inc.,* 473 F.Supp. 161 (S.D.N.Y.1979), a plaintiff longshoreman was injured when a crate being loaded onto a barge by his employer stevedore struck him on the head while he was in the stow of the barge. The plaintiff sued the bargeowner on theories of negligence and unseaworthiness. He also sued a tugowner under a negligence theory on the grounds that the tug had caused another barge to collide with the barge on which plaintiff was working, causing the crate to fall. The bargeowner cross-claimed against both the tug and the stevedore for indemnity under *Ryan.* At the end of plaintiff's case, the Court dismissed plaintiff's claims against the bargeowner, finding no evidence of negligence or unseaworthiness on the part of either the bargeowner or the stevedore; the bargeowner's cross-claim against the stevedore was also dismissed. The case proceeded on plaintiff's direct negligence claim against the tug and on the bargeowner's cross-claim against the tug for indemnity for attorneys' fees. The jury returned a verdict for the plaintiff, finding that the sole cause of plaintiff's *injuries was the negligent navigation of the tug.* Given these findings, the court denied the bargeowner's cross-claim for indemnity against the tug:

> In the case at bar, [the bargeowner] was not exposed to potential liability without fault because of the unworkmanlike performance of the [tug]. Such potential liability as [the bargeowner] bore to plaintiff . . . arose out of [the bargeowner's] stevedoring contract with [the stevedore], plaintiff's employer, pursuant to which plaintiff was working cargo on board [the barge]. [The tug] did not create an unseaworthy condition on board [the barge], or negligently trigger a previously existing unseaworthy condition thereby exposing [the bargeowner] to liability without fault. [The tug] simply ran into the barge. *Ryan* indemnity has no office to perform in the circumstances.

473 F.Supp. at 165.

We disagree with the district court's analysis. The fact that the bargeowner's potential liability to the seaman came about because the seaman was working on board the barge pursuant

to a stevedore contract does not alter the theory of *Ryan* indemnity—that a party is entitled to indemnification when it is exposed to potential liability without fault brought about by the negligent breach of a warranty of workmanlike service on the part of a third party. We find nothing in the cases to suggest that the shipowner's right to indemnification turns on the fact that the party from which indemnity is sought is the plaintiff's employer, as was the case in *Ryan.* More important, the court in *Gaymon* reasoned that the bargeowner should not be entitled to indemnification for attorneys' fees because the sole cause of plaintiff's injuries was found to be the tug's negligence and not the negligence or unseaworthiness of the bargeowner. At the same time, however, the court intimates in the language quoted above that if the plaintiff *had* established that the barge was unseaworthy, and that the unseaworthy condition was caused or brought into play by the tug, then the bargeowner would be entitled to indemnification for the resulting damages and fees. We must reject this analysis to the extent it suggests that the right to indemnity turns on whether the plaintiff's claims against the shipowner are successful or meritorious. As the Second Circuit noted in a similar context in *Massa v. C.A. Venezuelan Navigacion, supra:*

> There is no question that the stevedore breached the warranty to perform in a workmanlike manner, for the trial court found that the cause of the accident was the negligence of the stevedore's employees. This negligence rendered the shipowner liable to suit, and we see no good reason for forcing the shipowner to bear the expenses of *successfully* defending the suit when the stevedore would have to bear the shipowner's expenses of *unsuccessfully* defending the suit. Such a rule would place a premium on losing lawsuits.

332 F.2d at 782 (emphasis added). We think the correct rule is that the shipowner is entitled to indemnification for attorneys' fees where, as here, it successfully defends against or defeats claims of unseaworthiness or negligence for which it would be entitled to indemnification had the claims been successfully pursued.

the cross-claims of New Jersey and Morania. While *Ryan* allows indemnity for fees incurred in defending against an injured plaintiff's direct claims, it does not allow indemnification for fees expended in prosecuting the cross-claim itself. *Paliaga v. Luckenbach Steamship Co., supra,* 301 F.2d at 409 n. 1; *Flunker v. United States, supra,* 528 F.2d at 246.

New Jersey does not dispute this rule. Reply Memorandum of Law in Support of New Jersey Barging Corporation's Judgment for Indemnity and Statement of Fees and Disbursements, at 14–15. Rather, it contends that because Morania was asserting the same negligence and unseaworthiness claims as had been asserted by Rogers in his direct action, New Jersey was, for all practical purposes, defending against Rogers' claims, thereby entitling it to indemnity.

It is simply not the case that Morania was asserting the same claims as Rogers. Thus Morania claimed that Rogers was himself contributorily negligent, that there was ice on the deck (which Rogers denied), and that the line had been negligently stowed and should not have had an eye at both ends. None of these claims were asserted by Rogers. Moreover, even if Morania's cross-claims were founded on the same legal theories as Rogers' direct claims, the fact remains that the purpose of the litigation between New Jersey and Morania was to resolve those parties' cross-claims for indemnity and contribution. Morania's cross-claims against New Jersey were not being asserted on behalf of Rogers through a subrogation arrangement, but in Morania's own interests. We therefore find that all fees incurred after January 11, 1983, as well as all fees expended on New Jersey's motion for summary judgment on Morania's cross-claims were incurred exclusively in the indemnity/contribution dispute between Morania and New Jersey and, as such, are not recoverable.

## CONCLUSION

New Jersey is entitled to indemnification for all payments made to Rogers for main-

tenance and cure, amounting to $49,247.24, plus interest. New Jersey is entitled to indemnification for attorneys' fees and disbursements expended in defending against Rogers' direct actions against it. With that limitation in mind, we excluded from New Jersey's claim for $98,691.50 in attorneys' fees all charges expended on the summary judgment motion filed against Morania and all charges incurred after January 11, 1983, the date Rogers' action against New Jersey was settled, leaving a total claim of $41,120. We then rounded the figure of $41,120 to $40,000 to adjust for minor instances of excessive time charges (*e.g.* six hours billed for the June 8, 1982 deposition of plaintiff Rogers). Applying similar calculations to the claim for disbursements, we find that New Jersey is entitled to indemnification for $40,000 in attorneys' fees and $3,500 in related disbursements, plus interest.

Morania's cross-claims against New Jersey are hereby dismissed, as is New Jersey's petition for limitation of or exoneration from liability.

Submit judgment.