■ JOHN YACONO, Plaintiff, v BUCK KREIGHS CO., INC., Respondent, and WATERMAN STEAMSHIP CO., INC., Appellant. [660 NYS2d 878] —In an action to recover damages for personal

injuries, the defendant Waterman Steamship Co., Inc., appeals from an order of the Supreme Court, Kings County (I. Aronin, J.), dated August 16, 1996, which granted the motion of the defendant Buck Kreighs Co., Inc., for summary judgment dismissing its cross claim for indemnity and contribution.

Ordered that the order is affirmed, with costs.

The plaintiff, a longshoreman, was allegedly injured while working as a stevedore aboard a vessel docked at the 39th Street Pier in Brooklyn. The vessel was owned by the appellant Waterman Steamship Co., Inc. (hereinafter Waterman). The plaintiff allegedly tripped over or slipped on welding rods left on the deck by the defendant Buck Kreighs Co., Inc. (hereinafter Kreighs). Kreighs had completed repair work on the vessel some three days prior to the plaintiff's injury, when the vessel was docked in New Orleans. It is not alleged, and it does not appear, that the plaintiff was employed by either Waterman or Kreighs. In 1990, the plaintiff's action was dismissed as against both defendants pursuant to CPLR 3404 after he failed to respond to an inquiry by the court as to the status of the case. Although the plaintiff's action was later restored to the calendar by the Supreme Court, this Court reversed the ruling as to Kreighs and ordered the plaintiff's action against Waterman severed (see, Yacono v Waterman S. S. Co., 216 AD2d 556). The dismissal by this Court of the plaintiff's action as against Kreighs was on the merits, in that we held, inter alia, that the plaintiff had failed to proffer proof of the merit of his claims (see, Yacono v Waterman S. S., Co., supra). Kreighs sought summary judgment dismissing Waterman's cross claims for common law and implied contractual indemnification and contribution. In the order appealed from, the Supreme Court dismissed Waterman's cross claims. We now affirm.

Because the facts alleged satisfy both the situs and nexus tests for admiralty or maritime suits as set forth in Executive Jet Aviation v Cleveland (409 US 249), the parties are correct that general principles of Federal maritime negligence law are to be applied (see, Tompkins v Port of N. Y. Auth., 217 AD2d 269; Torres v City of New York, 177 AD2d 97, lv denied 80 NY2d 759, cert denied 507 US 986; Scholl v Town of Babylon, 95 AD2d 475). Pursuant to such principles, the dismissal of the plaintiff's complaint as against Kreighs, on the merits, warrants dismissal of Waterman's cross claims as against Kreighs to the extent that they seek common law contribution or indemnification for any alleged negligence by Kreighs in causing the plaintiff's injuries (see, Pittinger v Long Is. R. R., 233 AD2d 430; Bradford v Indiana & Mich. Elec. Co., 588 F Supp 708; cf., Keleket X-Ray Corp. v United States, 275 F2d 167).

Waterman does not challenge the Supreme Court's finding that the express terms of the contract between Kreighs and Waterman for the repair work effected in New Orleans did not provide for indemnification. However, Waterman does press its argument that, at the least, a question of fact has been raised as to whether it is entitled to implied contractual indemnification, based on Kreighs' alleged breach of its duty to have completed the repairs in a workmanlike manner, under a theory first articulated by the United States Supreme Court in *Ryan Co. v Pan-Atlantic Corp.* (350 US 124). Because such liability would arise from a contractual duty owed by Kreighs to Waterman, not a duty in tort owed by Kreighs to the plaintiff, the dismissal of the plaintiff's complaint as against Kreighs is not dispositive of this claim (*see, Ryan Co. v Pan-Atlantic Corp., supra; Simeon v Smith & Son,* 852 F2d 1421, *cert denied* 490 US 1106). However, as to this claim, there has been a failure of proof.

Because there is no controlling decision of the United States Supreme Court nor uniformity in the Federal maritime negligence law decisions of the lower Federal courts as to the issue presented (*see,* 2 Benedict, Admiralty § 11 [b] [7th ed]; Schill, *Recent Developments Regarding Maritime Contribution and Indemnity,* 51 La L Rev 975 [1991]), we are not obliged to follow the rulings of the Federal Circuit Court of Appeals for the Second Circuit (*see, Flanagan v Prudential-Bache Sec.,* 67 NY2d 500, *cert denied* 479 US 931). However, in light of the history and apparent intent underlying the decision in *Ryan Co. v Pan-Atlantic Corp. (supra),* we find the decisions of the Second Circuit to be persuasive.

In *Ryan Co. v Pan-Atlantic Corp. (supra),* a stevedore, Frank Palazollo, employed by the plaintiff, Ryan Stevedoring Co., was injured when he was struck by cargo that had been improperly stowed by another crew employed by the plaintiff. Palazollo collected benefits from the plaintiff-employer pursuant to the Longshore and Harbor Workers' Compensation Act (hereinafter LHWCA) (33 USC § 901 *et seq.).* He thereafter commenced suit against the defendant, Pan-Altantic Steamship Corp., the owner of the ship upon which the accident had occurred. The defendant-owner commenced a third-party action against the plaintiff-employer seeking indemnity and contribution. The Supreme Court dismissed all claims by the defendant-owner as against the plaintiff-employer arising from the alleged negligence of the plaintiff-employer toward Palazollo. As to these claims, the Court held that the sole remedy of *any* party as against the plaintiff-employer was the LHWCA. However, the

Court held, the LHWCA did not prohibit the defendant-owner from protecting itself either "by a bond of indemnity, or the contractor's own agreement to save the shipowner harmless" *(Ryan Co. v Pan-Atlantic Corp., supra,* at 130). On the facts before it, the Court held that an implied agreement to hold harmless could be found in the plaintiff-employer's contract with the defendant-shipowner to provide stevedoring services. The Court reasoned that the contract to provide such services necessarily included an agreement to stow cargo properly and safely, i.e., to perform the contracted for services in a workman like manner *(see, Ryan Co. v Pan-Atlantic Corp., supra,* at 133-134). The breach of such a duty, the Court held, gave rise to a claim by the defendant-owner for indemnification *(see, Ryan Co. v Pan-Atlantic Corp., supra).*

The *Ryan* doctrine arose to ameliorate the harsh effect of prior decisions of the Supreme Court, including *Seas Shipping Co. v Sieracki* (328 US 85) and *Halcyon Lines v Haenn Ship Corp.* (342 US 282). *Sieracki* placed on a shipowner the absolute duty, not turning on fault, to provide longshoremen and seamen with a "seaworthy" ship. Unseaworthiness was expansively construed to include any unsafe condition on the vessel that caused an injury *(see, Howlett v Birkdale Shipping Co.,* 512 US 92; *Scindia Steam Nav. Co. v De Los Santos,* 451 US 156; 2 Benedict, Admiralty § 11 [a] [7th ed]). This was true even if the unsafe condition was "caused, created or brought into play by the stevedore or its employees" *(Scindia Steam Nav. Co. v De Los Santos, supra,* at 164-165; *see also, Howlett v Birkdale Shipping Co., supra).* Thus, a faultless shipowner was placed in the unfair position of being held absolutely liable for any damages sustained by a longshoreman even if the damages arose solely from the negligence of the stevedore-employer *(see, Fairmont Shipping Corp. v Chevron Intl. Oil Co.,* 511 F2d 1252, *cert denied* 423 US 838). Amendments to the LHWCA in 1972 by Congress "radically changed the scheme of things" by eliminating the doctrine of unseaworthiness in favor of a negligence standard, increasing the benefits payable to longshoremen under the LHWCA, and abolishing the application of the *Ryan* doctrine as against stevedore-employers *(Scindia Steam Nav. Co. v De Los Santos, supra,* at 165; *see also, Edmonds v Compagnie Generale Transatlantique,* 443 US 256; *Fairmont Shipping Corp. v Chevron Intl. Oil Co., supra).* However, while stevedore-employers may no longer be held liable to shipowners under the *Ryan* doctrine, the Federal courts have continued to apply the *Ryan* doctrine to suits between shipowners and third parties other than stevedore-employers, including, *inter alia,* contractors *(see, Fairmont Shipping Corp.*

*v Chevron Intl. Oil Co., supra,* at 1258, n 10; 2 Norris, Law of Maritime Personal Injuries § 12:1, at 2 [4th ed]; 2 Benedict, Admiralty § 11 [b] [7th ed]). However, at least in the Second Circuit, the application of the *Ryan* doctrine has significant restrictions that are here controlling.

In *Fairmont Shipping Corp. v Chevron Intl. Oil Co.* (511 F2d 1252, 1258, *supra),* the Court of Appeals for the Second Circuit held: "we find the crucial elements of *Ryan* to be as follows: a shipowner, relying on the expertise of another party (the contractor), enters into a contract whereby the contractor agrees to perform services without supervision or control by the shipowner; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a pre-existing unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault. Where these elements are present, there will be implied in the contract an agreement by the contractor to indemnify the shipowner for any liability it might incur as a result of an unseaworthy condition caused or brought into play by the improper, unsafe or incompetent performance of the contractor" *(see also, Hartnett v Reiss S. S. Co.,* 421 F2d 1011, *cert denied sub nom. Grain Handling Co. v Hartnett* 400 US 852; *Rogers v New Jersey Barging Corp.,* 567 F Supp 822; *cf., Italia Societa v Oregon Stevedoring Co.,* 376 US 315, 324).

Thus, a cause of action for implied contractual indemnification under the *Ryan* doctrine, as applied by the Federal Court of Appeals for the Second Circuit, requires a finding that the "indemnitee's liability is predicated on some *non-fault* basis" *(Fairmont Shipping Corp. v Chevron Intl. Oil Co., supra,* at 1258, n 11 [emphasis added]). Here, because Waterman has not made the plaintiff's complaint as against it part of the record, we cannot determine whether the plaintiff is seeking to recover damages based on negligence or on some strict liability/non-fault basis. Accordingly, Waterman has failed to raise a triable issue of fact as to whether the *Ryan* doctrine of implied contractual indemnity is here applicable and the Supreme Court, Kings County, properly granted summary judgment to Kreighs. Rosenblatt, J. P., Ritter, Santucci and McGinity, JJ., concur.