Austin Joseph **RYAN**, Plaintiff-Appellant,

v.

**UNITED STATES LINES COMPANY,**
Defendant-Appellee.

No. 161, Docket 26854.

United States Court of Appeals
Second Circuit.

Argued Dec. 14, 1961.

Decided May 16, 1962.

Jacob Rassner, New York City (Theodore H. Friedman, New York City, on the brief), for plaintiff-appellant.

Thomas Coyne, New York City (Kirlin, Campbell & Keating, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, MOORE and HAYS, Circuit Judges.

432

LUMBARD, Chief Judge.

The plaintiff seaman, having been awarded a total of $9,764 as maintenance and cure and damages for an injury sustained on board the defendant's vessel, appeals on the ground that his award was inadequate.

On the morning of January 15, 1958, the S. S. Pioneer Ming, owned by the defendant United States Lines, was in Manila Harbor, preparing to unload cargo. While Austin Ryan, an able-bodied seaman, was assisting in the rigging and securing of the ship's gear, he was struck in the head and injured by either a shackle or shackle pin which a winch had torn loose from the pad eye to which they were attached. This resulting civil action included claims under the Jones Act, for maintenance and cure and for recovery on a theory of unseaworthiness. The Jones Act claim was dismissed by stipulation before trial, and the other counts were tried by the court without a jury. The court found unseaworthiness, which is not here questioned, and granted damages of $6,500 for lost wages and $1,000 for pain and suffering. In addition, it allowed maintenance and cure at the rate of $8 a day from the end of the Pioneer Ming's voyage on March 8, 1958 until February 24, 1959, with the exception of 50 days during which Ryan was hospitalized at the United States Public Health Service Hospital at Staten Island and another 21 days for which he had already been compensated.

Ryan claims that his recovery was inadequate in several respects—that the cutoff date for maintenance was too early, that the award for pain and suffering was insufficient, that he should have been granted damages for his alleged permanent disability, and that the court erred in making a deduction from the award for lost wages on account of income taxes that would have been due. He also claims error in the denial of his two motions for a new trial on grounds of newly discovered evidence. We reject all these arguments and affirm the judgment.

■■ We do not find clear error, see McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954), in the trial court's termination of maintenance as of the date when Ryan first returned to work, even though on several occasions thereafter he received outpatient care at various Public Health Service hospitals. We find ample support for Judge Powell's conclusion that Ryan "had received maximum medical benefit at the time." There is no inconsistency in the fact that on the unseaworthiness claim damages were awarded for lost wages beyond that date, inasmuch as the theories of recovery for maintenance and for injuries caused by unseaworthiness are totally different. On the unseaworthiness claim Ryan was entitled to full consequential damages, while his payments for maintenance and cure were properly limited to the period during which he was actually undergoing "cure" —that is, while he was undergoing medical treatment tending to improve his physical condition, rather than merely to prevent further deterioration. See Farrell v. United States, 336 U.S. 511, 69 S. Ct. 707, 93 L.Ed. 850 (1949); Gilmore & Black, Admiralty 264–68 (1957).

■ Although the award of $1,000 for the pain and suffering incident to Ryan's injury could not be attacked as overgenerous, we do not regard it as so inadequate as to require us to increase it, as we did in Porello v. United States, 153 F. 2d 605 (2 Cir. 1946), aff'd in part and rev'd in part on other grounds, American Stevedores, Inc. v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); see Koehler v. United States, 187 F.2d 933 (7 Cir. 1951). Judge Powell felt, with adequate reason, that a good deal of Ryan's trouble stemmed from psychological sources and not directly from any physical injury. Moreover, Judge Powell found that on occasions prior to the January 1958 accident Ryan had made complaints of headaches and back pain similar to those for which he was hospitalized in 1958. From this we may infer that Judge Powell concluded, as he could in reliance on certain of the medical tes-

timony before him, that the effect of this accident in causing or aggravating Ryan's complaints, be they psychogenic or genuinely physiological, was relatively small. This factor alone would keep the small award for pain and suffering from being clearly erroneous. Cf. Alexander v. Nash-Kelvinator Corp., 271 F.2d 524 (2 Cir. 1959). For the same reasons, it was appropriate to limit Ryan's recovery for lost wages, which he also attacks on this appeal.

Ryan contests specifically Judge Powell's statement in the oral opinion which preceded his formal finding that he did not consider Ryan to be totally disabled at the time of trial. It is enough to point out that, assuming that Judge Powell did rely upon this view in assessing damages—though it was not embodied in a formal finding—there is sufficient support for it in the conflicting medical testimony at the trial.

■ After Judge Powell's oral opinion at the trial's conclusion on May 18, 1960, but before the entry of judgment on August 22, 1960, Ryan's seaman's papers were on May 23 revoked by the Coast Guard on the ground of his physical unfitness for duty since September 1, 1959. On May 26, Ryan moved, presumably under Rule 59 of the Federal Rules of Civil Procedure, to reopen the trial on the ground that the certificate of revocation was new evidence bearing upon the extent of his disability. After a hearing, Judge Powell denied the motion. It was proper to do so. The revocation was based upon examinations performed at the Public Health Service Hospital at Staten Island in 1959, the results of which were in evidence and discussed by the expert witnesses at the trial. The only new matter added by the issuance of the certificate was the opinion of the Coast Guard's Merchant Marine Investigating Section that one marked "permanently not fit for duty" by doctors of the Public Health Service should have his seaman's license revoked. The certificate stated that Ryan could be reinstated by being declared fit by the Public Health Service, and Ryan's own affidavits stated that he had made an appointment for a new examination on June 15, 1960. Considering all the circumstances, the fact of the revocation by itself had virtually no probative value to show Ryan's disability. Thus it was well within the judge's discretion to decline to reopen the trial. See Alison v. United States, 251 F.2d 74, 77 (2 Cir. 1958).

On September 13, 1960, Ryan filed his notice of appeal to this court, and on March 13, 1961, the record on appeal was certified to us. Thereafter, on June 6, 1961, Ryan moved in the district court to reopen the judgment and grant a new trial on damages under Rule 60(b) of the Federal Rules of Civil Procedure. He claimed that new evidence had been discovered and that it was "no longer equitable that the judgment should have prospective application." The motion was supported by Ryan's affidavit to the effect that he had again been hospitalized on his complaints of head and back pain between February 13 and April 14, 1961, and by a doctor's affidavit to the effect that he had examined Ryan on January 16, 1961 and May 4, 1961, and had found that "the prognosis for Mr. Ryan was one of continued disability and need for medical treatment." The doctor further stated that "Based on the history provided deponent and deponent's own examinations of Mr. Ryan, it is deponent's opinion, within the reasonable degree of medical certainty, that the accident of January 15, 1958 was the competent producing cause of the present condition, disability, and need of medical treatment of Mr. Ryan above described."

In view of the fact that the district court had lost jurisdiction of the case by the filing of the appeal in this court, see Merritt-Chapman & Scott Corp. v. City of Seattle, 281 F.2d 896 (9 Cir. 1960); In re Federal Facilities Realty Trust, 227 F.2d 651 (7 Cir. 1955); Willoughby v. Sinclair Oil & Gas Co., 188 F.2d 902 (10 Cir. 1951); Hirsch v. United States, 186 F.2d 524 (6 Cir. 1951), Judge Levet, to whom the motion was referred because of Judge Powell's return

to the Eastern District of Washington, handled the motion in accordance with the procedure suggested in Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349 (1952) and supported by the approach taken by this court in the pre-Federal Rules case of Harper Bros. v. Klaw, 272 F. 894, 895 (2 Cir.1921). In Smith v. Pollin, the Court of Appeals for the District of Columbia Circuit prescribed the procedure it found implied in the analogous Criminal Rule 33, 18 U.S.C.A. for civil cases as well. Under this procedure, the district court is first to determine whether it would grant the motion; if it decides in favor of it, then and then only is the necessary remand by the court of appeals to be sought. In the case at bar, Judge Levet indicated that he would deny the motion.

■ We agree that the docketing of an appeal ousts the district court of jurisdiction except insofar as it is reserved to it explicitly by statute or rule.[1] We also agree that the procedure prescribed in Smith v. Pollin is proper and calculated to be most economical of the effort of courts and parties. Although here the district court has of necessity entered no "order" which we could reverse, and appellant's "notice of appeal" from it is therefore a technical nullity, considerations of judicial efficiency likewise impel us to review Judge Levet's conclusion on this appeal from the original judgment. It would be an absurdity to require appellant to return to the district court after this appeal is decided, there formally moving for a new trial, and then filing a new appeal from the inevitable denial.

■■ We agree with Judge Levet's denial of Ryan's motion for a new trial. Rule 60(b) (2), pertaining to "newly discovered evidence," permits reopening a judgment only on the discovery of evidence in existence and hidden at the time of the judgment, and the results of

new physical examinations are not such evidence. Campbell v. American Foreign S. S. Corp., 116 F.2d 926 (2 Cir.), cert. denied, 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941); Brown v. Pennsylvania R. R., 282 F.2d 522 (3 Cir. 1960). Rule 60(b) (5), which permits relief from a judgment on the ground that "it is no longer equitable that the judgment should have prospective application," properly applies only to judgments with prospective effect, and so does not cover the case of a judgment for money damages. Any suggestion to the contrary in Block v. Thousandfriend, 170 F.2d 428 (2 Cir. 1948) was ill-advised. See 7 Moore, Federal Practice 244 n. 10, 288 (1955, 1961 Supp.); cf. State of Pennsylvania v. The Wheeling & Belmont Bridge Co., 18 How. 421, 431–32, 59 U.S. 460, 15 L.Ed. 497 (1855). In any event, Judge Levet was well within the range of permissible discretion in determining that justice did not require a new trial. Cf., e. g., Brown v. Pennsylvania R. R., supra; Atchison, T. & S. F. Ry. v. Barrett, 246 F.2d 846 (9 Cir. 1957).

It remains for us to consider Ryan's contention that under the doctrine enunciated by this court in McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2 Cir., in banc), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960), it was error for Judge Powell to deduct $750 in lieu of income taxes from the $4,000 lost wages awarded Ryan for each of two years.

■ In McWeeney we held that it was not error for a trial judge to refuse to instruct a jury to make a deduction in lieu of income taxes from its award for prospective loss of income. In the present case, on the other hand, the deduction was made by a judge sitting without a jury, and we interpret the award to have been solely for wages lost prior to the date of trial.[2] Because none of the

---

1. In this case the record had already been filed and the appeal docketed. We need not pass upon the question whether the district court loses jurisdiction at some earlier time, as when the notice of appeal is filed.

2. The issue whether or not the award was entirely for past wages is complicated by the fact that three months after the delivery of his oral decision Judge Powell signed the defendant's proposed findings of fact, which state that "I find

award was for prospective damages, the speculative elements which impelled the McWeeney rule were almost entirely non-existent in this case. See 2 Harper & James, Torts § 25.12 (1956). The trial judge had before him Ryan's tax returns for the three years immediately preceding his injury, and, in the absence of any evidence that Ryan's earnings or deductions would have been different for the two years in question, it was proper for him to limit the award for lost wages to a figure roughly the same as Ryan's annual income after taxes before his injury.

We find no error in the district judge's making such computation.

Affirmed.

that plaintiff's past and prospective lost wages amount to $6,500." Under the circumstances, we think that greater weight should be given to the oral opinion, in which Judge Powell stated that he found

that Ryan's "disabilities from this particular accident" had already terminated. Well over two years had passed between the date of the injury and the beginning of the trial.