Dana Leigh THOMPSON, Plaintiff,

v.

COUNTY OF FRANKLIN; and William A. Hughes, Treasurer of Franklin County, Defendants.

No. 92–CV–1258(NPM)(DNH).

United States District Court, N.D.New York.

July 30, 1998.

Arlinda F. Locklear, Jefferson, MD, for Plaintiff.

Dwight A. Healy, White & Case, Syracuse, NY, for Defendants.

## MEMORANDUM–DECISION and ORDER

McCURN, Senior District Judge.

### Introduction

The court assumes familiarity with the protracted history of this litigation. Most recently, on December 5, 1998, the court granted summary judgment in favor of the plaintiff, Dana Leigh Thompson, "finding that her property is located within Indian country, ..., and, as such, is immune from the defendant County's *ad valorem* tax." *Thompson v. County of Franklin*, 987 F.Supp. 111, 127 (N.D.N.Y.1997) ("*Thompson III*"); *see also* Affidavit of Dwight A. Healey (April 27, 1998), exh. 11 thereto. Conversely, the court denied the defendants' cross-motion for summary judgment. A judgment reflecting the foregoing was filed on December 8, 1997. Healey Aff., exh. 14 thereto. The defendants timely filed with the Second Circuit a notice of appeal from, among other things, that judgment. *Id.*, exh. 15 thereto. By stipulation and order, in March, 1998, the parties agreed to "withdraw[ ] [that appeal] from active consideration[.]". *Id.*, exh. 16 thereto. Pursuant to the parties' agreement,

"such withdrawal [was] without prejudice to reinstatement ... within 30 days of issuance of a decision by the United States Supreme Court in *Cass County, Minnesota, et al. v. Leech Lake Band of Chippewa Indians* ..." *Id.* That stipulation further provided that "[i]n the event that the ... appeal is not reinstated in accordance with the terms of this stipulation, the appeal shall be deemed withdrawn *with prejudice.*" *Id.* (emphasis added).

After learning that Ms. Thompson had submitted a letter to the St. Regis Mohawk Tribe ("the Tribe") "retract[ing]" her Tribal membership, and after withdrawing their appeal, on April 29, 1998, the defendants, the County of Franklin, and William Hughes, County Treasurer [1] filed the present motion seeking relief under Fed.R.Civ.P. 60(b)(2). That subsection of Rule 60 permits a court to relieve a party from a final judgment based upon the existence of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed.R.Civ.P. 60(b)(2). The County is not seeking to be entirely relieved from the court's December 8, 1997, judgment. Rather, it is merely seeking to modify that judgment to declare that plaintiff Thompson is not immune from its *ad valorem* tax "effective as of the date of her resignation from the St. Regis Tribe." Memorandum of Law in Support of Defendants' Motion for Relief from Judgment ("Def.Memo.") at 2.

### Discussion

#### I. Jurisdiction to Entertain County's Motion for Post–Judgment Relief

On June 8, 1998, while the County's Rule 60(b)(2) motion was pending, the Supreme Court issued its decision in *Cass County, Minnesota v. Leech Lake Band of Chippewa Indians*, ── U.S. ──, 118 S.Ct. 1904, 141 L.Ed.2d 90 (1998). Consequently, on July 13, 1998, in anticipation of oral argument on the County's motion scheduled for July 29, 1998,[2] this court inquired of defense counsel

---

1. Hereinafter these defendants will be collectively referred to throughout as "the County."

2. Originally, oral argument was to be heard on this motion. After carefully examining the mo-

tion papers submitted in support of and opposition to the County's motion, the court determined that oral argument was not necessary, and the parties were so advised.

as to whether or not the County had reinstated its appeal. The County did file with the Second Circuit Court of Appeals a notice of reinstatement of appeal ("the notice") on July 6, 1998. *See* Docket # 88. In that notice it specifically states that the County is reinstating its appeal pursuant to the March 6, 1998, stipulation and order entered with the Second Circuit. *Id.* The threshold question, then, is what effect, if any, does the County's reinstatement of its appeal have on this court's jurisdiction to entertain the pending Rule 60(b) motion.

Although the parties addressed the issue of the court's jurisdiction to entertain this motion for post-judgment relief, they focused on whether this court has jurisdiction to entertain such a motion once an appeal has been withdrawn, as was the situation when the County filed its motion in April, 1998, and the plaintiff filed her opposition in May, 1998. Because those motion papers were filed prior to the County's recent filing of its notice with the Second Circuit, understandably, the parties did not address the issue of whether the court has jurisdiction to consider a Rule 60 motion *after* reinstatement of an appeal. Given this change in circumstances, the court will, and indeed must, consider the jurisdictional issue in light of the current procedural posture of this case. *See Mayer v. Cornell University, Inc.,* 909 F.Supp. 81, 86 (N.D.N.Y.1995), *aff'd without written decision,* 107 F.3d 3 (2d Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 68, — L.Ed.2d —— (1997) ("The court has an independent obligation to examine the basis for its jurisdiction, *see Lebron v. National Railroad Passenger Corp.,* 69 F.3d 650, 659 (2d Cir.1995), and may do so at any point in the litigation.").

■ " "[T]his circuit has repeatedly held that the docketing of a notice of appeal 'ousts the district court of jurisdiction except insofar as it is reserved to it explicitly by statute or rule.' " " *RPT Metro Equities Limited Partnership v. Petcas Management, Ltd.,* 91 CV 3360, 1995 WL 769020, at *1 (E.D.N.Y. Dec. 20, 1995) (quoting *Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir.1992)) (quoting in turn *Ryan v. United States Lines Co.,* 303 F.2d 430, 434 (2d Cir.1962)); *see also*

*Contemporary Mission Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981) (citation omitted) (district court properly denied plaintiff's Rule 60(b) post-judgment motion where prior to filing that motion plaintiff had filed a notice of appeal, reasoning that "[t]he filing of the notice of appeal divested the district court of jurisdiction to entertain the motion[ ]").

■ As the Second Circuit made clear in *Toliver,* however, a district court may entertain and *deny* a Rule 60(b) motion, even after an appeal is taken. *Toliver,* 957 F.2d at 49 (citation omitted); *see also RPT Metro,* 1995 WL 769020, at *1 (same). "This rule applies with equal force whether the motion was filed prior or subsequent to the notice of appeal." *Pagovich v. Moskowitz,* 93 CIV. 3195, 1994 WL 642886, at *1 (S.D.N.Y. Nov. 15, 1994) (citation omitted). On the other hand, a district court may not *grant* a Rule 60(b) motion after an appeal has been taken unless the Circuit Court "first give[s] its consent so it can remand the case, thereby returning jurisdiction over the case to the district court." *Toliver,* 957 F.2d at 49. In this regard, the Second Circuit has emphasized that " 'if [the district court] decides in favor of [the Rule 60(b) motion], *then and then only* is the necessary remand by the court of appeals *to be sought.'* " *Id.* (quoting *Ryan,* 303 F.2d at 434) (emphasis added). In *Toliver,* while plaintiff's appeal was pending, defendants moved for relief under Rule 60(b), and the district court granted that motion. The Second Circuit reversed, holding that the district court lacked jurisdiction to grant the Rule 60(b) motion because the Circuit Court had not first given its permission to remand the case for consideration of the Rule 60 motion. *Id.*

In light of the case law just discussed, undoubtedly a court may entertain and *deny* a Rule 60 motion for post-judgment relief, even while an appeal is pending. What is less clear, however, is how a district court should proceed if it intends to grant such a motion, also while a appeal is pending. Some district courts within this Circuit have simply indicated, with no discussion, that if the Second Circuit agreed to remand, those courts would be amenable to considering a Rule 60

220

motion, even after the filing of a notice of appeal. For example, in *Samsun Corporation v. Khozestan Mashine Kar Co.*, 95 Civ. 3523, 1996 WL 334413, at *1 (S.D.N.Y. June 18, 1996), after the petitioner filed his notice of appeal, the district court held that it could "do nothing unless the Court of Appeals gives its consent." Recognizing that "[o]n occasion, the Court of Appeals prefaces its giving of consent by an inquiry as to whether the District Court is prepared to address the pertinent issue[,]" the court tersely indicated that "[o]ne purpose of [its] Memorandum [was] to answer that inquiry, if made, in the affirmative." *Id.* The *Samsun* court did not, however, offer any reasons as to why it would be inclined to grant petitioner's Rule 60 motion.

Similarly, following the suggestion of staff counsel for the Second Circuit, in accordance with *Ryan*, the plaintiffs in *Lawrence v. Cohn*, 90 Civ. 2396, 1992 WL 18801 (S.D.N.Y. Jan. 28, 1992), asked the district court "whether it would be willing to entertain a motion to vacate under Rule 60(b) if the appeal is withdrawn." *Id.* at *1. The court stressed that plaintiffs were "not ask[ing] for an indication of how t[he] Court would rule on the ... motion but simply if the Court would be willing to consider such a motion." *Id.* The *Lawrence* court affirmatively responded to that narrow inquiry, noting that "[p]laintiffs presumably will now apply to the Court of Appeals for a remand[,]" and "[t]he Court of Appeals will respond to that application as it thinks right." *Id.* at *2. Thus, neither in *Samsun* nor in *Lawrence* did the district courts give any indication, one way or the other, as to how they intended to rule on the Rule 60 post-judgment motions; rather, the courts merely noted their willingness to consider such motions in the event of a remand from the Second Circuit.

While this court could proceed in a similar fashion, it is hesitant to do so given the unequivocal language in *Ryan* that only if a court intends to *grant* a Rule 60(b) motion is it permissible for a party to seek a remand from the Second Circuit. *See Ryan*, 303 F.2d at 434; *see also United States v. International Brotherhood of Teamsters*, 179 F.R.D. 444, 445–46 (S.D.N.Y.1998) (Because

the party had not "obtain[ed] an *express indication* that [the District] Court intend[ed] to grant [the party's] Rule 60(b) motion[,]" the Second Circuit denied that motion as premature.) (emphasis added) (citations omitted). It seems that in accordance with *Ryan* and its progeny, this court must first decide whether it will grant or deny the County's Rule 60(b) motion, which, in this court's opinion, necessarily entails examining the relative merits of that motion. Only then will the court be in a position to decide whether to deny the motion, which it clearly has jurisdiction to do, or whether it will grant the motion. If the court is inclined to grant the County's motion, then it will, as the Second Circuit seems to require, give an "express indication" that it intends to do so, but the court will not actually grant such relief at this juncture. The parties will then be free to take whatever action they deem appropriate before the Second Circuit. Having resolved this procedural issue, the court is now free to turn to a discussion of the merits of the County's motion.

## II. Rule 60(b)(2) Motion

### A. Legal Standard

Whether or not to grant a Rule 60(b) motion lies within the sound discretion of the court. *Rand International Leisure Products, Ltd. v. Teksource, L.C.*, 97 CV 0319, 1998 WL 372356, at *1 (E.D.N.Y. July 2, 1998) (citation omitted). As mentioned at the outset, "[r]ule 60(b)(2) permits a court, ..., to relieve a party from a final judgment or order based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." " *Tufts v. Corporation of Lloyd's*, 981 F.Supp. 808, 811 (S.D.N.Y.1996) (quoting Fed.R.Civ.P. 60(b)(2)), *aff'd on other grounds*, 128 F.3d 793 (2d Cir.1997). There are four criteria which a party must meet before it is entitled to relief under Rule 60(b)(2). "A movant seeking relief under Rule 60(b)(2), must demonstrate that (1) newly discovered evidence is of facts existing at the time of [the prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) the newly

discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative . . . of evidence already offered." *Rand International,* 1998 WL 372356, at *1 (internal quotations and citation omitted). In the present case, the County contends that it has satisfied all four of these elements and thus it should be allowed to be relieved, in part, from the judgment in this case. Even though plaintiff Thompson does not couch her responding argument in terms of the elements just enumerated, because "[t]h[ose] requirements . . . must be strictly met and courts may grant such relief *only under extraordinary circumstances* [,]" [3] the court will scrutinize the record to determine whether the County has, in fact, satisfied each of the elements listed above.

### B. "Newly Discovered"

■ With respect to the newly discovered evidence requirement, one noted commentator has explained, "[T]he evidence must have been in existence at the time of trial, but if it was in possession of the party before the judgment was rendered [then] it is not newly discovered evidence and does not entitle the party to relief." *MTB,* 1998 WL 43125, at *3 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2859, at 302–03 (2d ed. 1995)) (other citations omitted). As in the present case, evidence is considered "newly discovered" for purposes of Rule 60(b)(2) if it "existed at the time of the prior adjudication but . . . was discovered by the movant only after the entry of judgment." *Walker v. Department of Veterans Affairs,* 94 Civ. 5591, 1995 WL 625689, at *1 (S.D.N.Y. Oct. 25, 1995) (citations omitted). Here, as will be more fully explained below, it is undisputed that the evidence of Ms. Thompson's purported resignation from the Tribe was in existence during some of the time the cross-motions for summary judgment were pending and prior to entry of the judgment, but that evidence was not actually in the County's possession until after entry of the judgment.

■ As detailed in the affidavit of attorney Healey submitted in support of the County's motion, on approximately June 27, 1997, after all of the papers had been submitted and oral argument held in connection with the cross-motions for summary judgment,[4] and while those motions were still pending before the court, plaintiff Thompson tendered a letter to the St. Regis Tribal Clerk. Healey Aff., exh. 12 thereto. In that letter, which Ms. Thompson identified at the outset as pertaining to "retraction of membership," she unequivocally wrote:[5]

> To all whom these presents may come, be seen, or known, I, Dana Leigh Thompson, born on September 1, 1956, *do renounce and abjure,* including but not limited to explicit or implied, citizenship, protection, jurisdiction, and representation of/by, including but not limited to, the St. Regis Mohawk Tribal Council, the Kanienkehaka Nation Council, the United States of America, Canada, the Iroquois Confederacy, Great Britian, and the Assembly of First Nations.

> In furtherance of this declaration, I *adamantly* request that my name be *immediately removed* from the citizenship membership roll of, including but not limited to, the St. Regis Mohawk Tribe, the Mohawks of Akwesasne, the Peoples Government, and the Mohawk Nation.

> *Be it fully understood that I have repudiated all, including but not limited to, citizenship, protection, jurisdiction, and representation of/by the Mohawk Councils of Akwesasne, as well as others herein stated.*

> Recent actions, agreements, negotiations, and adverse mannerisms are construed as

---

**3.** *MTB v. Federal Armored Express, Inc.,* 93 CIV. 5594, 1998 WL 43125, at *3 (S.D.N.Y. Feb. 2, 1998) (emphasis added) (internal quotations and citation omitted); *see also Tufts, supra,* 981 F.Supp. at 811–12 (internal quotations and citations omitted) ("[S]ince Rule 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating exceptional circumstances.").

**4.** The cross-motions for summary judgment were argued in March, 1997, but a decision was not issued until December, 1997.

**5.** Although it is somewhat lengthy, so that the tenor of this letter can be fully appreciated, the text of that letter is set forth above in its entirety.

attempts to, extinguish, apply treaty to, limit, impede, and/or otherwise restrict the existent Aboriginal community of Akwesasne from exercising their inherent sovereign powers and sovereign right to independently organize, as explicitly stipulated by the definitive principles embodied within the Two Row Wampum, including but not limited to, the right to enjoy a common and peaceful coexistence.

I did not participate, and will not, including but not limited to, condone, ratify, sanction, or agree to, the actions of the aforementioned sovereign or quasi-sovereign governmental entities, nor will I be bound by their actions.

I further state and declare, that I am resident in Akwesasne and reside on Akwesasne Territory.

*Id.* (emphasis added). Ms. Thompson signed that letter on June 27, 1997, in the presence of two witnesses, whose signatures also appear thereon. *Id.*

Defense attorney Healey avers, that neither the County "nor [its] counsel knew or had reason to know of [this] . . . letter at any time prior to entry of judgment." *Id.* at 4, ¶ 8. It was only after the judgment was entered that the County's prior counsel in this action, David Peebles, "received information suggesting that Plaintiff might have resigned from the Tribe." *Id.* at 4, ¶ 9. "Mr. Peebles promptly attempted to contact Plaintiff's counsel . . . to ascertain if this rumor was correct." *Id.* On December 24, 1997, Peebles faxed plaintiff's counsel requesting that she "confirm that Ms. Thompson remains as an enrolled member of the Tribe." *Id.,* exh. 13 thereto. Mr. Peebles further requested the date which Ms. Thompson's "enrollment ceased to be effective," if she did not remain an enrolled member of the Tribe. *Id.*

In early January, 1998, plaintiff's counsel called Mr. Peebles "inform[ing] [him] that in fact Ms. Thompson had resigned from the Tribe in July of 1997." *Id.* at 5, ¶ 10. During that conversation, plaintiff's counsel agreed to provide Peebles with a copy of Ms. Thompson's resignation letter; but, for what-

ever reasons, that was not done until March 2, 1998, when the same was faxed to attorney Healey. *Id.* at 5, ¶ 11. Ms. Thompson is not challenging any of the foregoing, and the court has no reason to doubt that this sequence of events occurred as the County describes its. Thus, the County has shown that the evidence of Ms. Thompson's resignation, which is the sole basis for its motion herein, is "newly discovered evidence" such as would warrant relief under Rule 60(b)(2).

## C. *"Due Diligence"*

■ As the record proof also shows, plainly the County was "excusably ignorant" of the fact of Ms. Thompson's retraction letter until *after* the judgment was entered. Indeed, it was not until that time that the County's then·attorney first had any inkling that perhaps plaintiff had resigned as a Tribal member. Furthermore, in terms of " 'due diligence,' . . . the moving party must show why he did not have the evidence at the time of the trial or in time to move under Rule 59(b)." *MTB,* 1998 WL 43125, at \*3 (internal quotations and citations omitted). Here, it is obvious why the County did not have evidence of Ms. Thompson's purported resignation from the Tribe when it cross-moved for summary judgment or in time to move to alter or amend the December 8, 1997, judgment, as Rule 59(3) allows.[6] It was not until a few weeks after entry of the judgment that attorney Peebles first became aware that perhaps plaintiff had resigned as a member of the Tribe. When Peebles first became aware of that possibility, he immediately took efforts, described above, to ascertain the veracity of what, at the time, was nothing more than a rumor.

Understandably, the County, through its counsel at the time, Mr. Peebles, did not take any action to verify plaintiff's Tribal status before late December, 1997, after the filing of the judgment, because it was not until then that the County had any indication that plaintiff's Tribal status might have changed. Thus, certainly the County was "excusably ignorant" of plaintiff's June 26, 1997, "retrac-

---

6. That Rule provides that "[a]ny motion to alter or amend a judgment shall be filed no later than

10 days after entry of the judgment." Fed. R.Civ.P. 59(e).

tion of membership" letter; and until a few weeks after the filing of the judgment, it had no reason to use due diligence to learn about plaintiff's Tribal status because throughout this litigation (including on this motion), as the County is quick to note, plaintiff has consistently maintained that she is an enrolled member of the St. Regis Tribe.[7]

### D. Change in Result

Turning to the third requirement necessary to obtain relief from judgment under Rule 60(b)(2), in this case there is no claim that the newly discovered evidence, in the form of plaintiff's June 27, 1997, "retraction of membership" letter, is inadmissible.[8] Rather, the controversy centers on whether that letter is "probably effective to change the result"[9] of the court's December 5, 1997, decision and the judgment entered in accordance therewith. The County argues that Ms. Thompson's resignation from the St. Regis Mohawk Tribe effects that earlier decision because if she is not a Tribal member then, the *"per se"* rule that states cannot impose their taxes on Indian tribes and their members within Indian country[ ]"[10] would not apply. Instead, contends the County, because Ms. Thompson is no longer a Tribal member, the court now must balance the federal, state and tribal interests to determine whether the County may impose its *ad valorem* tax on her property. When that is done, the County asserts that it is entitled to tax plaintiff's property because she "cannot show any interest to counter the compelling interest of the County in imposing the tax[,]" in that the County provides "a full array of municipal services to the area in which Plaintiff's property is located and [thus] ha[s] a

strong interest in being able to impose *ad valorem* property taxes." Def. Memo. at 16. Thus, because in its view plaintiff is no longer a Tribal member, and because it has shown that it has a compelling interest in taxing plaintiff's property, the County vigorously contends that the court's earlier decision and related judgment should be modified to reflect the fact that plaintiff is liable for the County's *ad valorem* taxes on her property from June 27, 1997—the date she submitted her retraction letter to the Tribal Clerk.

Plaintiff Thompson does not directly respond to this argument by the County; instead she focuses upon whether her Tribal status has, in fact, changed. Plaintiff takes the position that notwithstanding her retraction letter, wherein she admits that she "did, indeed renounce her membership in the St. Regis Tribe of Mohawks[,]"[11] her status as a Tribal member remains unchanged because the Tribe has not yet removed her name from its membership rolls. In making this argument, plaintiff relies heavily upon the affidavit of the Tribe's Clerk, who acknowledges that she received Ms. Thompson's June 27, 1997, retraction letter. *See* Affidavit of Carol T. Herne, Clerk, Mohawk Tribe (May 27, 1998). According to the Tribal Clerk, Ms. Thompson remains an enrolled Tribal member despite that retraction letter because "[t]he Tribal membership Code, . . ., includes no explicit provision for removal from Tribal membership[.]" *Id.* The Clerk further avers that "overall responsibility for this membership code is vested in the Tribal Chiefs," and she has not been "delegated authority to take action nor been directed by

**7.** *See, e.g.,* Healey Aff., exh. 1 thereto at (copy of Complaint wherein, plaintiff specifically alleges that she "is a member of the St. Regis Mohawk Tribes[,] ... enrollment number ... T–0593"); Healey Aff., exh. 2 thereto (copy Sept. 8, 1992, Thompson affidavit wherein she avers "I am a member of the St. Regis Tribe of Mohawks."); Healey Aff., exh. 3 thereto (copy of Plaintiff's Opposition to Defendant's Motion to Dismiss, wherein plaintiff asserts that she is not subject to County tax laws because, among other things "she is an Indian who is a member of the St. Regis tribe[ ]"); and Healey Aff., exh. 4 thereto (copy of Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss,

wherein plaintiff reiterates that she "is an enrolled member of the St. Regis Tribe[ ]").

**8.** In fact, plainly that letter would be admissible as an admission by a party-opponent pursuant to Fed.R.Evid. 801(d)(2)(A).

**9.** *See Rand International, supra,* 1998 WL 372356, at *1.

**10.** Healey Aff., exh. 9 thereto at 3.

**11.** Plaintiff/Appellee's Memorandum in Opposition to Defendants' Motion for Relief from Judgment ("Pl.Memo.") at 9.

the Tribal Council to take action on Dana Leigh Thompson's letter[.]" [12] *Id.* at 1 (internal quotations omitted). In light of the foregoing, and keeping in mind the "fundamental principle . . . that Indian tribes retain the right to self-government[,]" [13] which includes " 'the power to regulate their internal and social relations[,]' " [14] plaintiff maintains that she is still a member of the Tribe because "[t]he Tribe has declined to disenroll Mrs. Thompson and this Court cannot second guess that decision." [15] Pl.Memo. at 5 (citation and footnote omitted). Thus, because plaintiff insists that she is still an enrolled member of the Tribe, in her opinion, there is no basis for altering the December 8, 1997, judgment, even in the face of the newly discovered June, 1997, retraction letter.

Alternatively, plaintiff argues that even if the retraction letter resulted in her no longer being a Tribal member, that would not effect the court's judgment for the tax years 1992–1007,[16] because at least up until June 27, 1997, she still was a member of the Tribe, residing within Indian country, and thus immune from the County's *ad valorem* tax. Plaintiff further contends that the court should deny the County's motion and the judgment should stand "unless and until reversed in the pending appeal." Pl.Memo. at 3.

Conceding that tribes "may establish membership criteria and the procedure for determining whether that criteria has been satisfied," [17] the County argues, nonetheless, that a tribe's right to self-determination with respect to tribal membership does not preclude an individual, such as plaintiff Thompson, from renouncing her tribal membership. And because that is precisely what Ms. Thompson did in her June 27, 1997, letter, the County contends that she is no longer a member of the St. Regis Mohawk Tribe. Thus, as mentioned at the outset of this decision, the County is seeking modification of the December 8, 1997, judgment "to declare that Plaintiff is not immune from the County's *ad valorem* tax effective as of the date of her resignation from the St. Regis Tribe." Def.Memo. at 2.

**12.** Although, as noted above, the Membership Code (at least that part provided to the court on this motion) does not explicitly address the procedure for renouncing tribal membership, the Code explicitly directs that "[a]pplications for membership are to be made through the Tribal clerk; [and] should someone disagree with the Tribal Clerk, then provisions are made for appeal to a Membership Court." Herne Aff., attachment thereto at 1. The court observes in passing that arguably if the Tribal Clerk is vested with the authority to determine Tribal membership status in the first instance (as it appears that she is from the just quoted language), then, at least initially, she is also vested with the authority to decide whether someone has terminated her Tribal relationship, especially where, as here, the Membership Code is silent as to how an individual terminates her relationship with the Tribe.

**13.** *Bowen v. Doyle,* 880 F.Supp. 99, 112 (W.D.N.Y.1995).

**14.** *Id.* (quoting *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983)) (quoting in turn *United States v. Kagama,* 118 U.S. 375, 381–82, 6 S.Ct. 1109, 1112–13, 30 L.Ed. 228 (1886)).

**15.** Contrary to plaintiff's assertion, the record does not support a finding that the Tribe has "declined" to disenroll Ms. Thompson. All that can be said, based upon the record as it is presently constituted, is that the Tribe has taken no action with respect to plaintiff's retraction letter.

At this juncture, the court is compelled to comment that it certainly seems as though plaintiff Thompson is seeking to take advantage of the Tribe's inaction with respect to her retraction letter. While the court does not pretend to know or to completely understand what it means to be a Tribal member, it takes little imagination to realize that tribal membership confers benefits, as well as responsibilities, upon an individual. It appears that plaintiff Thompson wants to be a Tribal member when it suits her purposes (for example, when Tribal membership will shield her from tax liability), but that she does not want to be a Tribal member when it does not suit her purposes. Obviously, plaintiff cannot have it both ways.

**16.** *See* Pl.Memo. at 3. The court finds plaintiff's reference to this particular time frame somewhat curious. It is the court's understanding that at least when this lawsuit was first commenced, plaintiff had property taxes owing for the 1989 tax year, as well as for 1990, 1991 and 1992; and, obviously, she continued to incur tax liability for unpaid *ad valorem* taxes up through the date of the judgment in this action.

**17.** Reply Memorandum of Law of Defendants in Response to Plaintiff's Opposition to Motion for Relief from Judgment and in Further Support of Such Motion ("Def.Reply Memo.") at 3.

Because plaintiff Thompson recognizes that if she did renounce her Tribal membership on June 27, 1997, then, from that date forward, she is liable to the County for *ad valorem* taxes on her property,[18] the pivotal issue is whether plaintiff did, in fact, sever her relationship with the Tribe when she submitted her retraction letter to the Tribal Clerk. To be sure, as both parties recognize, "Indian tribes are distinct political entities retaining inherent powers to manage internal tribal matters[,]"[19] and those inherent powers include "[a] tribe's right to define its own membership for tribal purposes[.]" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 1685 n. 32, 56 L.Ed.2d 106 (1978) (citations omitted).[20] By the same token, however, as the leading federal Indian law scholar has observed:

> Tribal membership is a bilateral relation, depending for its existence not only upon the action of the tribe but also upon the action of the individual concerned. A member of any Indian tribe is at liberty to terminate the tribal relationship *whenever he or she so chooses*, although such termination will not be lightly inferred.

Felix S. Cohen, *Handbook of Federal Indian Law*, 22 (1982 ed.) (emphasis added and footnotes omitted); *see also* 1934 WL 3190 (Sol. Gen.), at *21 ("It is of course recognized throughout the cases, that tribal membership is a bilateral relation, depending for its existence not only upon the action of the tribe but also upon the action of the individual concerned. Any member of any Indian tribe is at full liberty to terminate his tribal relationship whenever he so chooses."). Cases discussing termination of the tribal membership are few. As the County points out, though, cases where the issue has arisen comport with the just quoted observation though, cases where the issue has arisen comport with the just quoted observation by Felix S. Cohen. For example, "[i]n the famous case of *United States ex rel. Standing Bear v. Crook* (5 Dill, 453, 25 Fed.Cases No.

14,891), in which an Indian secured a writ of habeas corpus directed against a general of the United States Army, to prevent his removal to Indian Territory, the court found that the petitioner, Standing Bear, had severed his relationship with his tribe and was, therefore, not subject to the provisions of any treaties or legislation concerned with the removal of the tribe to Indian Territory." 1934 WL 3190, at *21. In reaching that conclusion, the court opined, in the tone of the day, that "the individual Indian possesses the clear and God-given right to withdraw from his tribe...." *Standing Bear*, 25 Fed.Cas. at 698; *see also Smith v. Bonifer*, 154 F. 883, 886 (C.C.D.Or.1907), *aff'd*, 166 F. 846 (9th Cir.1909) ("Indian members of one tribe can sever their relations as such, and may form affiliations with another or other tribes.").

The court is fully aware that both *Standing Bear* and *Bonifer* are easily distinguishable from the present case on their facts. In the absence of any authority directly on point, however, the court is convinced that plaintiff Thompson had the right, which clearly she exercised when she submitted her June 27, 1997, retraction letter, to sever her relationship with the St. Regis Mohawk Tribe. That right is not, in the court's opinion, dependent upon the Tribe taking any action when, in a case such as this, plaintiff's actions were so absolute. Indeed, it is difficult to imagine a retraction letter more clear and emphatic in its intent. This is not a situation where the court is being asked to infer termination. Consequently, the court is persuaded that through the June 27, 1997, retraction letter, plaintiff severed her relationship with the Tribe. Having done so, plaintiff can no longer avail herself of the argument, which was central to her summary judgment motion, that she is immune from the County's *ad valorem* taxes because she is a member of an Indian tribe, residing in Indian country. As plaintiff has admitted in connection with this motion,[21] if the court finds, as it has, that effective June 27, 1997, she was *no longer an enrolled mem-*

**18.** *See* Pl.Memo. at 3.

**19.** *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996) (citing, *inter alia, Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 16, 8 L.Ed. 25 (1831)).

**20.** *See also United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

**21.** *See* Pl.Memo. at 2–3.

226

ber of the Tribe, then she is liable to the County for *ad valorem* taxes after that date. In light of this finding, there is no need for the court, in determining plaintiff's liability for property taxes, to engage in the balancing test urged by the County herein.

### E.  Not Cumulative

■ The final element necessary for relief under Rule 60(b)(2) is that the newly discovered evidence not be merely cumulative of previously offered evidence. Plainly the newly discovered evidence of plaintiff Thompson's resignation does not fall into that category. As previously discussed, throughout this litigation, Ms. Thompson has consistently maintained that she is a Tribal member, and the County had no reason to believe otherwise until late December, 1997, after the court's decision holding that plaintiff was not liable to the County for *ad valorem* taxes. At that time, attorney Peebles first became aware of the possibility that plaintiff may have renounced her Tribal membership. Thus, as the foregoing discussion demonstrates, because the County has satisfied each of the four elements necessary to obtain relief from judgment under Rule 60(b)(2), the court finds that this case presents extraordinary or exceptional circumstances warranting the relief sought by the County herein; that is, modification of the December 8, 1997, judgment to reflect that plaintiff is liable to the County for *ad valorem* taxes after June 27, 1997.

The court is mindful, however, of its limited role at this juncture.[22] Therefore, although for the reasons discussed herein the court is inclined to grant the County's Rule 60(b)(2) motion, it will not do so at this time given the pending appeal. Instead, the court advises the Second Circuit and the parties of its willingness to grant the County's motion in this regard. Until such time, if ever, as this case is remanded from the Second Circuit, however, the court will not actually grant that relief.

IT IS SO ORDERED.

22.  *See* discussion *supra* 219-20.