UNITED STATES of America, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.

In the Matter of the Disqualification of Ron CAREY.

No. 88 Civ. 4486(DNE).

United States District Court, S.D. New York.

June 3, 1998.

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendants.

*OPINION & ORDER*

EDELSTEIN, District Judge.

*Background*

This case is before this Court on Defendant Ron Carey's ("Carey") motion for a declaration from this Court that it intends to grant Carey's motion for relief from judgment under Fed.R.Civ.P. 60(b)(2), at such time as this case is remanded to it by the United States Court of Appeals for the Second Circuit. Carey seeks to move this Court for relief from the judgment entered on December 30, 1997, affirming the Election Officer's disqualification of Carey from the International Brotherhood of Teamsters ("IBT") rerun election. *United States v. IBT ("Carey Disqualification")*, 988 F.Supp. 759 (S.D.N.Y.1997), *appeal docketed*, 98–6014 (2d Cir. Jan. 14, 1998). The facts and procedural history surrounding Carey's disqualification from the rerun election are set forth in that opinion and will not be recounted in detail here.

After the Election Officer, Honorable Kenneth Conboy, conducted an extensive investigation in which he interviewed numerous wit-

nesses and reviewed thousands of documents, he issued his decision disqualifying Carey from running in the rerun election. The Election Officer found that Carey knew of and participated in illicit fundraising schemes for the benefit of his reelection campaign. *See In re: Jeraldine Cheatem,* Post–27–EOH (KC) (Nov. 17, 1997) ("Disqualification Decision"), at 35. These schemes included the expenditure of $735,000 in IBT general treasury funds for the benefit of his reelection campaign, and the solicitation and receipt of tens of thousands of dollars from non-IBT union officials and others precluded from contributing to union campaigns. *Id.* at 35–36.

Carey appealed the Election Officer's decision to this Court. In his papers in support of his appeal of the Disqualification Decision, Carey claimed to possess "substantial new evidence" that would cast doubt upon the inculpatory statements made to the Election Officer by Carey's campaign manager, Jere Nash ("Nash") and Carey's personal secretary, Monie Simpkins ("Simpkins"). See Appeal of Ron Carey from the November 17, 1997 Decision of the Election Officer ("Carey Appeal Br.") at 12 n. 4, 17 n. 8, 44 n. 26, 60 n. 29. Carey sought to persuade this Court to hold an evidentiary hearing despite the fact that he was not entitled to one under the Election Rules. This Court declined to order an evidentiary hearing, ruling that Carey had offered "no good reason why he failed to present this alleged new evidence to the Election Officer." *Carey Disqualification,* 988 F.Supp. at 766. Therefore, this Court, having found that the Election Officer's decision was amply supported, affirmed the Election Officer's decision in its entirety. *Id.* at 770.

On January 14, 1998, Carey appealed this Court's December 30, 1997 Order to the United States Court of Appeals for the Second Circuit. Carey's Notice of Appeal divested this Court of jurisdiction over the matter of his disqualification. See *Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir.1992). On February 26, 1998, Carey

moved the Court of Appeals for an order remanding the case to this Court so that he may present his Rule 60(b) motion. The Court of Appeals, on April 1, 1998, denied Carey's motion for remand as premature. *United States v. IBT (Carey),* No. 98–6014, Order (2d Cir. Apr. 1, 1998). The Court of Appeals ruled that before it would remand the case to this Court, Carey must obtain an express indication that this Court intends to grant Carey's Rule 60(b) motion. *Id.* (citing *Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir.1992)); see also *Ryan v. United States Lines Co.,* 303 F.2d 430, 434 (2d Cir. 1962).

### Jurisdiction

■ Traditionally, when an appeal is taken from the district court, the district court is divested of jurisdiction, "except to take action in aid of the appeal until the case is remanded to it by the appellate court." *Saunders v. Heavy Equipment Leasing Co. Inc.,* 1990 WL 36221, *1 (W.D.N.Y.). Therefore, the pendency of Carey's appeal from this Court's judgment to the Court of Appeals would deprive this Court of jurisdiction over Carey's Rule 60(b) motion. *Toliver,* 957 F.2d at 49. However, "a line of authority exists within this circuit which departs somewhat from that rule by permitting a district court to both consider and deny a rule 60(b) motion, while refraining from acting upon an expressed inclination to grant the motion." *Id.* (citing *Ryan,* 303 F.2d at 433–34).

Under the procedure espoused by the Court of Appeals in *Ryan,* "the district court is first to determine whether it would grant the motion; if it decides in favor of it, then and then only is the necessary remand by the court of appeals to be sought." *Ryan,* 303 F.2d at 434.[1]

### Standard of Review

■ Rule 60(b)(2) permits a court, in its discretion, to relieve a party from a final judgment or order based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a

---

1. In his papers to this Court, Carey has stated that "[s]hould this Court expressly so indicate [its intention to grant Carey's motion], Mr. Carey will then obtain the necessary remand from the

Court of Appeals so that this Court may grant" his motion. Memorandum of Points and Authorities in Support of Mr. Carey's Rule 60(b) Motion, at 3.

new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). Rule 60(b) motions are addressed to the broad discretion of the district court and are granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986); *see also Audiovisual Publishers, Inc. v. Cenco, Inc.,* 580 F.2d 50, 52 (2d Cir.1978).

■ In evaluating a motion under Rule 60(b)(2), a court must consider the proffered evidence against a stringent standard.

> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Frankel v. ICD Holdings S.A.,* 939 F.Supp. 1124, 1127 (S.D.N.Y.1996); *Weissmann v. Freeman,* 120 F.R.D. 474, 476 (S.D.N.Y. 1988). These requirements must be "strictly met." *United States v. All Right, Title and Interest in Property and Premises Known as 710 Main Street, Peekskill, N.Y.,* 753 F.Supp. 121, 126 (S.D.N.Y.1990).

### Discussion

Carey seeks relief from this Court's December 30, 1997 Order based on what he characterizes as "newly discovered evidence which by due diligence could not have been discovered in time" to move this court to alter or amend its judgment under Fed. R.Civ.P. 59(b) or 59(e). Memorandum of Points and Authorities in Support of Mr. Carey's Rule 60(b) Motion ("Carey br."), at 1. The "newly discovered" evidence on which Carey relies for his present motion was adduced at the Independent Review Board's ("IRB") hearings conducted in January and March of 1998.[2] Carey seeks to offer as evidence the testimonies of Nash, Gary Heying ("Heying"), and Theresa Sherman ("Sherman") to attack the veracity of the

prior statements Nash and Simpkins provided to the Election Officer that implicated Carey in the illicit fundraising schemes. Carey br. at 6–37. According to Carey, the evidence "conclusively demonstrates that the . . . allegations relied upon by the Election Officer were false in all critical aspects, and further demonstrates that Mr. Carey never knew of the fundraising improprieties within his campaign." Carey br. at 5.

### A. Nash's IRB Testimony

In support of his Rule 60(b) motion, Carey offers Nash's IRB testimony in order to question the Election Officer's reliance upon Nash's sworn statement submitted to the Election Officer. In his sworn statement to the Election Officer Nash stated that Carey approved the $475,000 improper contribution to Citizen Action after Nash informed Carey that the contribution would help Martin Davis with fundraising for the Carey campaign. See Disqualification Decision, at 20.

First, Carey relies upon Nash's IRB testimony in which Nash admitted that he had been convicted of perjury. Carey br. at 9–11. Second, Carey claims that telephone and travel records submitted to the IRB demonstrate that Nash lied when he stated that he had spoken to Carey over the telephone on a certain date about the swap scheme. *Id.* at 11–14. Third, Carey argues that Nash had a motive to lie because he admitted in his IRB testimony that he was cooperating with the Government, and he admitted that he was employed by the November Group while he was funneling IBT contributions to the November Group. *Id.* at 14–21. Finally, Carey asserts that Nash admitted in his testimony to the IRB that he said little to Carey about the swap scheme other than to inform Carey that Carey's approval of the $475,000 Citizen Action contribution would help Martin Davis with fundraising. *Id.* at 21–28.

■ The Nash IRB testimony constitutes potential impeachment evidence. It is well established that evidence offered solely to impeach the credibility of a witness does not

---

2. The IRB is currently in the process of investigating allegations of corruption against Carey and has not yet rendered its own judgment. This Court's opinion today in no way reflects its assessment of the substance of the evidence presently before the IRB.

meet the stringent standards for relief under Rule 60(b)(2). See *Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); *Baxter Int'l, Inc. v. Morris,* 11 F.3d 90, 93 (8th Cir.1993); *Scutieri v. Paige,* 808 F.2d 785, 794 (11th Cir.1987); *Trans Mississippi Corp. v. United States,* 494 F.2d 770, 773 (5th Cir.1974); *710 Main Street,* 753 F.Supp. at 127.

■ Nevertheless, Carey argues that "this evidence directly rebuts the central evidence on which the [Election Officer] relied," and that "[e]vidence which demonstrates that testimony central to the disputed issue was false is neither cumulative nor 'merely impeaching' and will support a Rule 60(b)(2) motion." Carey br. at 14 (citing *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 516–17 (1984)).[3] However, Carey does not argue that Nash's IRB testimony contradicted Nash's sworn statement to Election Officer Conboy. Rather, Carey argues that Nash's IRB testimony showed that Nash had a motive to lie, and that therefore his inculpatory statements to Election Officer Conboy should not be believed. This Court finds that this evidence is, at best, merely impeaching and does not support a Rule 60(b)(2) motion.

In addition, Nash's IRB testimony does not constitute "newly discovered evidence." The fact that Nash is a convicted perjurer who was cooperating with the Government was expressly addressed by Election Officer Conboy in the Disqualification Decision. See Disqualification Decision at 2. Carey explored this potential impeachment evidence in his brief on appeal to this Court from the Disqualification Decision. See Carey Appeal br. at 44–88. Nash's employment with the November Group likewise cannot be considered "new evidence" since Carey made reference to it in his appeal to this Court. *Id.* at 48–49 (stating that "Jere Nash was secretly on the payroll of Martin Davis and the November Group"). Finally, although the telephone and travel records submitted to the IRB were not previously made available to the Election Officer or this Court, these records do not qualify as "newly discovered evidence" because they were available to Carey all along and he has not offered any valid explanation why he failed to discover this evidence prior to this Court's decision.

Carey argues that he could not have brought any of this evidence to light prior to the Disqualification Decision because he did not know "the identity of his accusers or substance of their statements." Carey br. at 4. However, this argument is inconsistent with his submission to the Election Officer. See Letter from Reid Weingarten to Kenneth Conboy dated November 12, 1997 ("Carey Submission"). In that submission, Carey demonstrated that he knew the identity of Nash and the likely substance of his sworn statement to the Election Officer. *Id.* "Questions from the [Election Officer] at Mr. Carey's November 10, 1997, deposition suggest that Jere Nash may claim to have alluded to Mr. Carey that the Citizen Action contribution was in some fashion 'good for the campaign.'" *Id.* at 8. Furthermore, Carey had the opportunity to, and did, attack Nash's credibility in his submission to the Election Officer by alluding to Nash's possible motive of "trying to curry favor with the authorities as he faces incarceration for his role in the scheme." *Id.*

### B. *Heying's & Sherman's IRB Testimony*

■ Carey's Rule 60(b) motion also offers additional IRB testimony that he suggests should cast doubt upon the statements made by his personal secretary, Simpkins, to the Election Officer. Carey br. at 29–37. In the Disqualification Decision, Election Officer Conboy credited Simpkins' statement that Carey had approved each of the four improper "swap scheme" contributions after she discussed them with Carey and after she told him that Nash had called regarding each contribution. See Disqualification Decision at 25. Simpkins did not testify before the IRB. Carey's proposed "new evidence" with respect to Simpkins consists principally of the testimony of two other witnesses, Heying and Sherman, who worked with Simpkins at the IBT. At the IRB hearings, Carey pre-

---

3. In *Rosebud Sioux,* evidence was discovered after the trial that a witness testified before a federal grand jury that he had given false testimony during his deposition for the trial. *Rosebud Sioux,* 733 F.2d at 515.

sented the testimony of Heying and Sherman alleging that (1) Simpkins had signed Carey's initials to one of the four improper contributions without receiving Carey's prior approval; and (2) Simpkins had expressed a fear of prosecution for having done so, which Carey argued was Simpkins' motive to implicate him falsely. See Carey br. at 30–34.

Carey's reliance upon the testimony of Heying and Sherman is unavailing. First, the evidence provided by Heying and Sherman in their IRB testimony constitutes impeachment evidence in regards to the statements of Simpkins to the Election Officer. As previously stated, such impeachment evidence does not satisfy the stringent standards for relief under Rule 60(b)(2). See *Kirkland v. City of Peekskill*, 87 Civ. 8112, 1989 WL 31644, at *3 (S.D.N.Y. March 28, 1989) (stating that "[t]he fact that the recent testimony of Prezioso and Williams contradicted that of another or of other witnesses, and thus may provide a basis to impeach credibility, is not a ground for Rule 60(b) relief."), *aff'd mem.*, 888 F.2d 125 (2d Cir. 1989).

Second, the evidence offered to impeach Simpkins is not "new" or "newly discovered." As the Second Circuit held in *United States v. Potamkin Cadillac Corp.*, "[i]n order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is 'truly newly discovered or . . . could not have been found by due diligence.'" *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir.1983) (citation omitted), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983). Carey possessed this evidence at the time he appealed the Election Officer's decision to this Court. In his brief on appeal, Carey stated:

> We have recently received evidence that we are prepared to introduce at a hearing that Ms. Simpkins admitted signing off on at least one contribution without discussing it with Mr. Carey. Ms. Simpkins voiced her concern that she could go to jail for this conduct.

Carey Appeal br. at 17 n. 8, see also *id.*, at 60 n. 29. Therefore, this evidence is not "newly discovered."

In addition, the statements made by Heying and Sherman could have been found by due diligence in time for these statements to have been presented to the Election Officer prior to the Disqualification Decision. As Carey admits in his papers to this Court, Heying and Sherman are "long term IBT clerical workers, who worked in the Office of the General President." Carey br. at 30. According to Carey, Heying "shared an office with Monie Simpkins," and Sherman was "a close friend and co-worker of Simpkins." *Id.* at 31–32. Carey was aware that Simpkins had signed his initials to memoranda approving the improper IBT contributions and that Election Officer Conboy was investigating Carey's knowledge of these improper contributions. As the Government points out, "[d]espite their proximity and obvious availability to the General President, Carey offers no legitimate reason why he did not locate these two witnesses earlier; indeed, Carey should have been able to locate these two witnesses even prior to" the Election Officer's Disqualification Decision. Government's Memorandum of Law in Response to Carey's Rule 60(b) Motion ("Government's br."), at 15.

Thus, Carey offers no convincing explanation for his failure to discover this evidence prior to this Court's December 30, 1997 decision affirming the Election Officer's Disqualification Decision. Instead, once again, Carey asserts that he had no opportunity to develop any rebuttal or impeachment evidence prior to Election Officer's Disqualification Decision because the procedures followed by the Election Officer precluded him from "knowing the identity of his accusers or the substance of their statements." Carey br. at 4.

However, as previously mentioned, Election Officer Conboy gave Carey the opportunity to present evidence and legal argument prior to issuing his decision. Carey's submission to the Election Officer clearly demonstrates that Carey knew the identity of Simpkins, and the likely substance of the evidence provided by her. See Carey Submission at 9–10. In his submission to the Election Officer, Carey stated:

> [w]hile Mr. Carey has been questioned extensively about alleged statements made by his secretary, . . . there is no basis to believe Ms. Simpkins establishes any

wrong doing on his part. Ms. Simpkins, who is suffering greatly as a result of stress associated with the investigation, has apparently given inconsistent testimony. Assuming that her account is that she informed Carey of, and obtained his approval for, the challenged contributions, all this establishes is that Mr. Carey approved generally-described contributions to appropriate organizations whose philosophies were viewed favorably to the IBT. *Id.* Therefore, since Carey knew the identity of Simpkins, and the likely substance of her statements to the Election Officer, there is no excuse for his failure to discover and submit earlier the Heying and Sherman evidence.

### C. *Carey's Request For An Evidentiary Hearing*

In his papers to this Court, Carey argues, in the alternative, that he is entitled to discovery of the evidence relied upon by the Election Officer, and to an evidentiary hearing. Carey br. at 2. This Court has already considered and rejected Carey's challenges to the Election Officer's fact finding procedures, and has explicitly held that Carey was not entitled to an evidentiary hearing under the Election Rules. *Carey Disqualification*, 988 F.Supp. at 766. In order for the Election Rules to be effective, there must be prompt investigation and resolution to thousands of election protests. The effectiveness of these rules would be eroded if principles of finality were disregarded and parties could reopen an investigation simply by presenting potential impeachment evidence discovered or developed months after the fact.

### *Conclusion*

Therefore, after due consideration of the instant motion, this Court finds that Carey has failed to satisfy the stringent standards for relief under Rule 60(b)(2), and thus this Court finds no reason to depart from its original ruling. Carey's motion under Rule 60(b)(2) and his request for an evidentiary hearing are accordingly denied.

SO ORDERED.