**UNITED STATES of America, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**No. 88 Civ. 4486(DNE).**

United States District Court, S.D. New York.

June 2, 1999.

---

Mary Jo White, United States Attorney for the S.D. N.Y. (Karen B. Konigsberg, Assistant United States Attorney, of counsel), for U.S.

Charles M. Carberry, Independent Review Board Chief Investigator, New York City (Celia A. Zahner, of counsel), for Independent Review Board.

Winston & Strawn, New York City (Steven B. Rissman, James Terry, Matthew C. Rueter, of counsel), for respondent Robert T. Simpson, Jr.

### OPINION & ORDER

EDELSTEIN, District Judge.

### BACKGROUND

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia,* the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board ("GEB"). The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has ˋbeen set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant matter shall be set forth.

Currently before this Court is Robert T. Simpson, Jr.'s ("Simpson") motion brought pursuant to Rule 60(b)(5) and 60(b)(6) of

the Federal Rules of Civil Procedure, to vacate this Court's judgment and for reconsideration of his motion for recusal of Frederick B. Lacey ("Lacey"), a member of the Independent Review Board ("IRB") for the IBT.

## FACTS

On June 30, 1994, the IRB issued a report recommending that the IBT charge Simpson with violating the IBT Constitution by (1) bringing reproach upon the IBT and (2) interfering with Local 743's legal obligations by allowing Donald Peters to act as an agent and representative of Local 743 after the entry of a consent decree barring Peters from these positions. *See United States v. IBT [Simpson]*, 931 F.Supp. 1074, 1080 (S.D.N.Y.1996). On July 5, 1994, the IBT charged Simpson as the IRB recommended and returned the matter to the IRB for adjudication. *Id.*

The IRB conducted a hearing on the charges against Simpson on December 20 and 21, 1994. On July 25, 1995, the three member panel of the IRB issued a unanimous decision finding that the charges against Simpson were proven. Accordingly, the IRB permanently barred Simpson from holding any IBT-affiliated office or employment. The IRB's decision was then forwarded to this Court for review. *See id.* at 1079.

After the IRB issued its decision, in a motion to this Court, Simpson raised the issue of recusal of Lacey for the first time. In that motion, for which Simpson now seeks reconsideration, he alleged that a letter Lacey wrote to Thomas Puccio ("Puccio"), the Trustee of Local 295 ("April 1994 letter"), was evidence that Lacey was biased against Simpson. On June 27, 1996, this Court rejected Simpson's claim of bias and affirmed the IRB's decision. *See id.* at 1074. In refusing Simpson's demand for Lacey's recusal, this Court employed the "involved officer or member" standard set forth in Article XIX, § 1(a) of the IBT Constitution. *Id.* at 1103.

Simpson appealed to the Court of Appeals for the Second Circuit, who in turn, affirmed this Court's decision. *See United States v. IBT*, 120 F.3d 341 (2d Cir.1997). In rejecting Simpson's claim of bias, the Second Circuit held that

> Simpson's claim [of bias] is based solely on [his] speculation and conclusory allegations. Simpson has sought to conjure a claim that Lacey [is] biased against him from a series of inferences based on a single sentence in the [April 1994 letter] that Simpson claims demonstrates that Lacey is biased in favor of Carey. From this one sentence, Simpson infers that Lacey is partial to Carey, that this alleged partiality makes Lacey biased against Simpson because of an alleged "falling out" between Carey and Simpson, and that this alleged bias against him caused the IRB to take action against Simpson that the IRB otherwise would not have taken.

*Id.* at 347–48 (citations and footnote omitted).

In a similar case, former IBT Vice President Gene Giacumbo ("Giacumbo") claimed that the same April 1994 letter proved that Lacey was biased against him. This Court similarly rejected Giacumbo's claim, again using the "involved officer or member" standard. *See United States v. IBT [Giacumbo]*, 951 F.Supp. at 1129–30. On Appeal, the Second Circuit remanded the *Giacumbo* matter to this Court, finding that the appropriate standard for determining whether an IRB member should recuse himself is the "evident partiality" standard of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2). *See United States v. IBT [Giacumbo]*, 170 F.3d 136.

On March 26, 1999, this Court issued a decision finding that even under the evident partiality standard there was no basis for Giacumbo's claim that Lacey should have recused himself. *See United States v. IBT [Giacumbo]*, 1999 WL 169635, at *3, 1999 U.S.Dist. LEXIS 3957 (S.D.N.Y. March 26, 1999) at *9–10. This Court reasoned that:

The full test of the April 1994 letter and the circumstances surrounding that letter demonstrated no partiality on the part of Lacey toward Carey. Instead, the letter expressed Lacey's objection to the litigation tactics of Puccio. As Lacey explained during his July 30, 1998 testimony before the Subcommittee on Education and the Workforce of the United States House of Representatives ("Subcommittee"), he wrote the letter after he had been informed that Puccio had threatened to make allegations damaging to Carey if the IBT did not agree to expand Puccio's jurisdiction to include IBT Local 851....

At the time of the April 1994 letter, the IRB was already engaged in an investigation into allegations against Carey.... Indeed, prior to the April 1994 letter, and at the IRB's direction, the IRB Chief Investigator, Charles M. Carberry, requested Puccio to provide any information Puccio had with respect to Carey.... The April 1994 letter simply expressed Lacey's disapproval of the release of allegations publicly for the purpose of blackmail....

*Id.* Subsequent to this Court's March 26, 1999 decision, Simpson, relying solely upon the April 1994 letter and the Second Circuit's decision in *Giacumbo* regarding the appropriate standard for determining the merits of a request for the recusal of an IRB member, made the instant motion pursuant to Rule 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure. Memorandum of Law in Supp. of Robert T. Simpson, Jr.'s Mots. to Vacate J. and for Recons. of his Mot. for Recusal ("Simpson Mem.") at 4–7.

*Discussion*

■ "Rule 60(b) motions are addressed to the broad discretion of the district court...." *United States v. IBT*, 179 F.R.D. 444, 447, 1998 U.S.Dist. LEXIS 8193, *5–6 (S.D.N.Y. June 3, 1998) (citations omitted). Rule 60(b)(5) provides that a court may relieve a party from final judgment where "it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b)(5). Rule 60(b)(6) states that a court may relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). The Second Circuit has held that "[s]ince 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) (citations omitted).

■ Simpson makes no showing of exceptional circumstances warranting relief under Rule 60(b). Simpson, who failed to raise the recusal issue before the IRB and only raised the issue after the IRB issued its decision, waived any claim for recusal. His claim was based upon a May 15, 1995 *Time* magazine article which quoted from the April 1994 letter, yet he did not raise the recusal question until August 1995, after the IRB issued its decision. By failing to make the recusal request to the IRB promptly after the evidence that purportedly supported his request was publicly available, Simpson waived any recusal claim. *See Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987) ("It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such claim."). Furthermore, Simpson's submission to this Court merely reiterates arguments he previously offered this Court and the Court of Appeals for the Second Circuit, which both Courts found to be "based solely on Simpson's speculation and conclusory allegations." *See United States v. IBT [Simpson]*, 120 F.3d at 347; *United States v. IBT [Simpson]*, 931 F.Supp. at 1106.

■ Relying upon the Second Circuit's decision in *Giacumbo* that established the evident partiality standard, Simpson argues that this Court must now revisit his case and apply that same standard here.

Simpson Mem. at 1–3. A subsequent panel decision, however, may not overrule a prior decision of another panel of the Second Circuit. *See United States v. Moore,* 949 F.2d 68, 71 (2d Cir.1991) (stating that "prior opinions of a panel of this court are binding upon us in the absence of a change in the law by a higher authority or our own en banc proceeding ..."); *Finkel v. Stratton Corp.,* 962 F.2d 169, 174 (2d Cir. 1992) (holding that "one panel of this court may not overrule the decision of a prior panel."). The panel in *Giacumbo* remanded the case to this Court with instructions "to consider *Simpson* as now modified by our formulation of the appropriate recusal standard." *United States v. IBT [Giacumbo],* 170 F.3d 136, 147. Thus, while the *Giacumbo* panel indicated that the new standard that this Court should employ in the *Giacumbo* case and in the future is the evident partiality standard, it did not overrule and may not overrule the prior panel's decision in *Simpson.* Therefore, the result in the *Simpson* case remained unchanged.

■ In addition, while a "change in decisional law is cognizable under Rule 60(b)(5)," *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 757 n. 4 (2d Cir.1986), absent special circumstances making prospective application of the judgment unjust, a change in the law will not warrant relief under Rule 60(b)(5). Simpson makes no attempt to establish special circumstances, nor does justice require that this Court vacate the judgment. Accordingly, Simpson is not entitled to any relief based upon the Second Circuit's decision in *Giacumbo.*

Furthermore, even if there were a basis to reconsider Simpson's recusal motion, Simpson's asserted grounds for Lacey's recusal are without merit. Simpson's argument is based principally on one sentence in the April 1994 letter written in a context wholly unrelated to the charges against Simpson. Simpson claims that the April 1994 letter, which makes no reference to Simpson, "clearly show[s] that, *at the time,* Lacey had placed himself in the role of a political supporter of Carey and viewed any opposition to Carey's then reelection efforts as a threat to the IRB's work." Simpson Mem. at 5 (emphasis in original). Simpson contends that the April 1994 letter and the *Time* magazine article quoting it "demonstrated Lacey's evident partiality as a member of the IRB, particularly given Simpson's then-status as a prominent critic and political opponent of Carey." *Id.* at 5–6.

Simpson's reasons for recusal are virtually identical to the grounds this Court specifically rejected in its decision denying Giacumbo's recusal request under the evident partiality standard. *See United States v. IBT ("Giacumbo Remand"),* 1999 WL 169635 (S.D.N.Y. March 26, 1999), *3. This Court found that "the full text of the April 1994 letter and the circumstances surrounding that letter demonstrated no partiality on the part of Lacey toward Carey. *Id.* Moreover, this Court found that "even if the April 1994 letter could be construed as demonstrating partiality toward Carey, Giacumbo's conjecture that the letter indicates Lacey's bias against him is mere speculation and is insufficient to establish bias under the 'evident partiality' test." *Id.* at *4.

■■ As this Court found with respect to Giacumbo's claims, Simpson's argument for recusal also fails to satisfy the evident partiality standard. The rule in the Second Circuit is that evident partiality exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984). The test a court must apply "is an objective one which assumes that a reasonable person knows and understands all the relevant facts." *In re Drexel Burnham Lambert, Inc.* 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d

1012 (1989). The full text of the April 1994 letter and the attendant circumstances, which Lacey described under oath in July 1998 before the Subcommittee on Oversight and Investigations of the Committee on Education and the Workforce of the United States House of Representatives, reveal that Lacey had not placed himself in the role of a political supporter of Carey and was not biased against Simpson as one who was a political opponent of Carey.

*Conclusion*

For the foregoing reasons, Simpson's motion to vacate and for reconsideration of his recusal motion is DENIED.

SO ORDERED