Susan **MEINEKER** and Sybil **McPherson**, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**HOYTS CINEMAS CORPORATION,** Defendant.

**United States Department of Justice,** Intervening Plaintiff,

v.

**Regal Cinemas, Inc.; Regal Entertainment Group; and Hoyt Cinemas Corporation,** Intervening Defendants.

No. 5:98–CV–1526.

United States District Court, N.D. New York.

July 15, 2004.

Disability Advocates, Inc., Attorneys for Plaintiffs, Albany, NY, Timothy A. Clune, Esq., of counsel.

United States Department of Justice, Intervening Plaintiff, Disability Rights Section, Civil Rights Division, Washington, D.C., Gretchen E. Jacobs, Esq., of counsel.

King & Spalding, Attorneys for Defendants and Intervening Defendants, New York, NY, Michael J. Malone, Esq., Patricia A. Griffin, Esq., of counsel.

### ORDER

HURD, District Judge.

In 1998, plaintiffs Susan Meineker and Sybil McPherson ("plaintiff")[1] brought suit against defendant Hoyts Cinemas Corporation ("defendant"), alleging that the wheelchair seating at certain movie theaters violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* This case has been the subject of nearly six years of litigation. Familiarity with both the facts and procedural history are, therefore, assumed.

Following reversal of summary judgment in favor of defendant by the Second Circuit Court of Appeals, *Meineker v. Hoyts Cinemas Corp.*, 69 Fed.Appx. 19 (2d Cir.2003), *rev'g*, 216 F.Supp.2d 14 (N.D.N.Y.2002), plaintiff moved for relief under Fed.R.Civ.P. 60(b)(2) of an earlier decision excluding the testimony and report of their expert, *Meineker v. Hoyts Cinemas Corp.*, 154 F.Supp.2d 376 (N.D.N.Y.2001). Oral argument was

---

**1.** Because plaintiff Susan Meineker passed away on February 8, 2002, the singular "plaintiff" is used. Her estate has not been substituted as a party in this action.

heard on April 29, 2004, in Albany, New York. Decision was reserved.

The basis upon which plaintiff moves for relief is the discovery of new evidence, in the form of a 1991 letter from defendant— or persons acting under their control—to the Maine Human Rights Commission in which the 1989 Society of Motion Picture and Television Engineers engineering guidelines were adopted as the industry standard regarding sightlines in movie theaters. *See* Fed.R.Civ.P. 60(b)(2) (permitting relief from a prior order on the basis of "newly discovered evidence which by due diligence could not have been discovered. ...."). Plaintiff claims that the existence of this letter undercuts the main rationale used to exclude her expert—that the expert's use of the SMPTE guidelines was precluded because they were not the industry standard regarding theater design.

■ Plaintiff misreads the decision excluding her expert. The primary basis of the decision—which, incidentally, excluded both sides' experts—was that expert testimony is not needed in this case. *"Alternatively,"* the opinions of the experts were excluded on reliability grounds, specifically, because it was found that there was no industry standard on which he could base an opinion, and because his opinion was developed "for this case," and was not "based directly on preexisting research conducted independently of the litigation." *Meineker,* 154 F.Supp.2d at 379–80 (emphasis added). Thus, regardless of whether the alternative basis for excluding plaintiff's expert remains valid after the Second Circuit's decision—and no opinion is expressed on the same—the primary basis does remain valid.

There is no dispute that this lawsuit is governed by Section 4.33.3 of the Accessibility Guidelines for Buildings and Facilities ("Section 4.33.3"). At issue are two requirements in Section 4.33.3:(1) that wheelchair-bound persons be provided with "lines of sight comparable to those for members of the general public," and (2) that seating for wheelchair-bound persons "be an integral part of any fixed seating plan." To resolve this case, two tasks need accomplished. First, both parts of Section 4.33.3 need to be interpreted to develop the standard applied to Hoyts's theaters. Second, that interpretation needs to be applied to Hoyts's theaters.

It is beyond dispute that the first task—interpreting Section 4.33.3—needs no expert testimony to be accomplished. In this regard, the Second Circuit's remand is instructive. The panel vacated summary judgment in defendant's favor and remanded the case for resolution of two issues, the first of which is whether the interpretation of Section 4.33.3 by the Department of Justice, which appeared for the first time on appeal as amicus curiae and has now intervened, should be afforded deference. Regardless of whether the question is determining if deference is appropriate, or, if not, independently interpreting Section 4.33.3, the decisions to be made are uniquely judicial. In other words, the existence of the 1991 letter— even if it contradicts earlier submissions filed by defendant—does nothing to change the bedrock principle, undisturbed by the Second Circuit, that interpreting Section 4.33.3 is a uniquely judicial function to be undertaken as a matter of law.[2]

■ Applying the interpreted Section 4.33.3 to defendant's theaters likewise requires no assistance from expert wit-

**2.** The 1991 letter may be relevant regarding one or both of the two issues on remand from the Second Circuit.

nesses. Initially, it is noted that plaintiff apparently seeks to offer the expert testimony on an ultimate issue to be decided in this case—whether the theaters violate Section 4.33.3 and, therefore, the ADA. *See* Docket No. 119, Attach. 2, p. 6 ("As directed by the Second Circuit, this Court must **ultimately** determine whether [defendant] provided comparable lines of sight from the wheelchair spaces at Crossgates Theaters. Plaintiffs' expert relied solely on the SMPTE guidelines to demonstrate that the lines of sight from the wheelchair spaces were not comparable to those of the general public") (emphasis added). Resolving ultimate issues is within the sole province of the finder of fact, either by motion or a bench trial.

Perhaps more importantly, expert testimony is simply not needed. If the DOJ's interpretation of Section 4.33.3 is given deference, no specialized knowledge is needed to apply that interpretation. If the DOJ's interpretation of Section 4.33.3 is not given deference, no specialized knowledge is needed in order to apply the section. The latter conclusion, used as the primary basis for excluding plaintiff's expert, was not disturbed by the Second Circuit. That the SMPTE guidelines may be relevant to the issues identified by the Second Circuit for resolution does nothing to change this fact. No help is needed in applying Section 4.33.3 to the facts of this case.

Therefore, because knowledge of the 1991 letter to the Maine Human Rights Commission would not have changed the decision to exclude plaintiff's expert, the motion under Rule 60(b)(2) must be denied. *See United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir.2001) (stating that, in order to successfully move for relief under Rule 60(b)(2), a plaintiff must demonstrate, *inter alia,* that the new evidence is " 'of such importance that it probably would have changed the outcome' " of the decision from which the party seeks relief) (quoting *United States v. IBT,* 179 F.R.D. 444, 447 (S.D.N.Y.1998) (internal citation omitted)).[3] For the same reason, exercise of any equitable power to revisit the decision excluding plaintiff's expert is unnecessary and inappropriate.

However, strong displeasure at what is viewed as a misrepresentation made by defendant must be highlighted. In the 1991 letter, which was signed by Harold Blank and Raymond J. Gaudet, Hoyts's Assistant Vice President and Director of Construction, respectively, for defendant, it was acknowledged that:

> [i]ndustry standards regarding sightlines are best described in the attached article which appeared in the SMPTE JOURNAL (SOCIETY OF MOTION PICTURE AND TELEVISION ENGINEERS) during the month of June, 1990. This article details the SMPTE Engineering Guideline for Design of Effective Cine Theatres. It will be referenced throughout this letter as EG 18–1989. *This article fully establishes an industry standard.*

(Docket No. 119, Attach. 9, p. 2) (emphasis added); *see also id.* (" 'Visibility' as described in the SMPTE Engineering Guideline EG–18–1989 is as follows …"); *id.* ("SMPTE defines the vertical sightline 'C' as …"); *id.* at 3 (" 'Viewing angle', according to the SMPTE EG–18–1989 guide-

---

**3.** Therefore, no opinion need be expressed as to whether plaintiff has met the other requirements of a successful Rule 60(b) motion in general, *see* Fed.R.Civ.P. 60(b) (requiring motion to be made "within a reasonable time, … not more than one year after the judgment, order, or proceeding was entered or taken"), or a Rule 60(b)(2) motion specifically, *see Teamsters,* 247 F.3d at 392 (requiring also a demonstration that new evidence existed at time of prior order, that the moving party was ignorant of it despite due diligence, and that it is not cumulative of other evidence or merely impeaching).

line ..."); *id.* at 4 (" 'Image Size' according to the SMPTE EG–18–1989 Guideline ...").

Ten years later, in an affidavit dated February 20, 2001, *submitted by defendant* in opposition to plaintiff's motion to exclude its expert, Harold Cleveland, Hoyts's Senior Vice President of Development, stated the following:

> I am advised that plaintiffs have argued that the SMPTE guidelines provide long-standing industry standards for the design of movie theaters. That is not the case. The consensus in the theater industry has *always* been that the SMPTE guidelines do not provide standards for the design and construction of movie theaters. In fact, professionals in the theater industry were quite surprised when plaintiffs began raising SMPTE guidelines in legal actions brought under the [ADA], because these guidelines have *never* been considered to be standards for theater design, either voluntary or mandatory. In my work on the [National Association of Theater Owners] Standards Committee, I have not become aware of *any* architect or theater owner that follows or relies on the guidelines in designing and constructing movie theaters.

(Docket No. 119, Attach. 8, ¶ 5.) (emphasis added).

■ Defendant argues that no intentional misrepresentation occurred because, essentially, Cleveland began working for defendant in 1997 and the company is so large that the 1991 letter got lost in the shuffle. (Docket No. 146, Transcript of Oral Argument, Apr. 29, 2004, pp. 13, 17). The defendant (as with any litigant) has an unwavering duty to refrain from submitting documents that are false, misleading, or purposively incomplete, no matter the company's size or length of history. Whether the SMPTE guidelines provided an industry standard was an issue on which both parties focused, so it was incumbent on defendant not only take a side, but to make sure that the side it took comported with its own history. Defendant had a duty to seek out those individuals employed by it that had the relevant knowledge on the issue, including Gaudet, who was a signatory to the 1991 letter and *who has filed submissions in this very case.* As a person intimately, if not centrally, involved with the construction and/or renovation of defendant's theaters, it would be preposterous not to ask his opinion on the issue. If defendant did not so question Gaudet, or other relevant persons with knowledge, then it has at least committed a misrepresentation by omission, or concealed a fact, however relevant. Thus, defendant's argument against an intentional misrepresentation occurring, even if technically true, is a distinction without a difference.

Nevertheless, because interpreting and applying Section 4.33.3 needs no expert assistance, plaintiff's motion for relief from the decision excluding her expert will be denied.

Accordingly, it is

ORDERED that plaintiff's motion for relief from the decision excluding her expert from testifying and rendering a report is DENIED.

IT IS SO ORDERED.